**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Francis Allan CLARK,**
**Defendant–Appellant.**

No. 90–4399.

United States Court of Appeals,
Fifth Circuit.

April 30, 1991.

Ronald J. Rakosky, New Orleans, La., for defendant-appellant.

Tonda L. Curry, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Tyler, Tex., Karen Skrivseth, Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GARZA, POLITZ and JONES, Circuit Judges.

GARZA, Circuit Judge:

Francis Allan Clark was involved in an investigation by the federal government for his participation in some real estate development. Clark, though previously claiming he was innocent, pled guilty in a plea agreement to four violations of 18 U.S.C.A. § 1014 (aiding and abetting false statements to a federally insured savings and loan institution); he was also required to pay restitution and forfeit any profits he attained through the Investex fraud.[1] Sentencing was postponed to give Clark an opportunity to cooperate with ongoing governmental investigations. More than two years after pleading guilty, Clark read his presentence report and three months later filed a motion to withdraw his plea of guilty. After a hearing, the motion was denied. He was sentenced to 8 years imprisonment, a $20,000 fine and $2,000,000 in restitution. Clark filed a motion to correct an illegal sentence under Fed.R. Crim.P. 35(a) but it was denied. Clark appealed. We affirm in part, reverse in part, and remand.

## I. The Facts.

Clark and Joseph E. Casperone entered into a project to develop some land. They presented three real estate investment proposals to Investex (a Savings and Loan) to participate as an equity partner. Investex would be a 25% partner, Casperone and Clark together would represent 25%, and they would get the other 50% from individual investors for each project. Investex made an initial commitment of $110,000,-000.

---

1. Judge Steger was originally assigned to the case but after the plea agreement was entered into but before sentencing Judge Justice took over the case. Judge Steger recused himself because one of his former clerks was hired to defend Clark.

On one of the projects (the Brodsky Tract), Clark bought approximately 202 acres for about 8 million dollars but because of a false land appraisal he arranged, the land was sold for over 33 million dollars. The investors borrowed from Investex; Investex's books showed a loan amount of over 42 million dollars. Because of the false land appraisal, Investex was short some 34 million dollars in its collateral position.

The government conducted an investigation and Clark signed a plea agreement which required him to enter a plea of guilty to four counts of aiding and abetting the making of false statements to a federally insured bank to obtain loans.[2] The guilty plea was entered on June 29, 1987. Clark claims he has consistently maintained his innocence and he only agreed to the plea to protect his wife who was sick, pregnant and innocent. Clark made all the restitution payments required by the plea agreement.

Clark cooperated in the government's further investigations and when it came time for his sentencing, he discovered his presentence report called for an additional $2,000,000 in restitution to be paid. Clark moved to withdraw his guilty plea and later moved to correct an illegal sentence;[3] both motions were denied. Judge Justice found the presentence report provided a sufficient basis to assess restitution and the court was not limited in assessing restitution by the plea agreement.

## II. Analysis

### Denial of Clark's motion to withdraw his guilty plea

Fed.R.Crim.P. 32(d) permits the defendant to make a motion to withdraw a guilty plea before sentencing upon a showing of any fair and just reason. In this circuit, seven factors must be considered when deciding whether to allow the withdrawal:

1) Whether the defendant has asserted his innocence.

2) Whether the government would suffer prejudice.

3) Whether the defendant has delayed in filing his motion.

4) Whether withdrawal would substantially inconvenience the court.

5) Whether close assistance of counsel was present.

6) Whether the original plea was knowing and voluntary.

7) Whether the withdrawal would waste judicial resources; and as applicable the reason why defenses advanced later were not proffered at the original time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion.

*United States v. Carr*, 740 F.2d 339, 343–344 (5th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). When reviewing a district court's decision to deny a motion to withdraw a guilty plea, we will apply an abuse of discretion standard. *U.S. v. Daniel*, 866 F.2d 749, 752 (5th Cir.1989).

Though Clark claims he has asserted his innocence throughout the government's investigation, he did plead guilty under oath to a federal district judge. In denying Clark's motion to withdraw his plea, Judge Justice observed that Clark has not consistently maintained his innocence. The judge noticed that when cross-examined in a criminal trial case styled *United States of America v. James L. Hays and Weldon J. Hays*, Clark did not unequivocally proclaim his innocence.[4] "An individual accused of crime may voluntarily, knowing-

---

**2.** There were twenty two tracts of land each of which had a similarly overvalued appraisal.

**3.** Clark based this on the fact that the $2,000,000 was improperly and illegally assessed and the court could not order him to pay any additional restitution without first affording him an opportunity to withdraw his guilty plea.

**4.** Q. Are you guilty of those offenses?

A. I don't guess I really know what you're asking me.
Q. Well, obviously you pled guilty. You physically went down there and said you were guilty and pled guilty, but in your heart and in your mind are you guilty in your mind
A. No, sir.

ly and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). Furthermore, the mere assertion of innocence, absent a substantial supporting record will not be sufficient to overturn a denial of a motion to withdraw. *Carr*, 740 F.2d at 344.

▮ The district court made a finding that the government would suffer prejudice if this motion were granted. The court made the decision citing the difficulties in renewing an investigation long after it had been terminated, the absence from governmental service of several key governmental investigators and the fact that most of the records are no longer in a convenient form.[5] Because of the deference accorded the district court, we accept the finding the government would be prejudiced.

Clark delayed filing his motion over two years. He claims once he learned about the scope of his criminal liability, he acted quickly in filing his motion to withdraw. This quick action took from September 1989 until December 13, 1989; Clark blames this delay upon the reluctance of his counsel to file the motion. "[T]he longer a defendant delays in filing a motion, the more substantial reasons he must proffer in support of his motion." *Carr*, 740 F.2d at 344. This requires a defendant to bear an even greater burden in proving the delay was justified. Clark has produced, without much support, a tenuous explanation in light of the district court's order; we therefore find the delay was not justified.

Clark claims his counsel who advised him to accept the plea agreement was ineffective because he did no independent investigation. Clark feels if an attorney can advise his client on a plea agreement based only on what he is told by the prosecution, than there is little need for an accused to

have counsel. The district court, however, found Clark's counsel to be "as competent as any likely to be retained in this jurisdiction." Merely because an attorney does not do much independent investigation before advising a client does not on its face suggest ineffective counsel. The district court found competency and we find it was within his discretion.

*U.S. v. Darling*, 766 F.2d 1095 (7th Cir.) *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985), states "[t]he defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity." The district court found Clark to be an intelligent and experienced negotiator, and made a knowing and voluntary plea. Though Clark asserts the government coerced him to make the plea by threatening to indict his wife, there is no credible evidence that the government was insincere in considering whether to prosecute Mrs. Clark. *United States v. Diaz*, 733 F.2d 371, 375 (5th Cir.1984). Clark knew what was going on. He was an intelligent individual and had adequate counsel. Under the plea he was subject to a maximum of 8 years which is exactly for how long he was sentenced. The district court did not err in denying his motion.

The district court also found granting the motion to withdraw would seriously inconvenience the court and waste judicial resources. Though the court did not fully explain its reasoning on those points, this does not amount to reversible error. All of the *Carr* factors need not be addressed, nor be in the defendant's favor in order to "tip the scales to the extent necessary to find an abuse of discretion." *United States v. Badger*, 925 F.2d 101, 104 (5th Cir.1991). Accordingly, the denial of Clark's motion to withdraw his guilty plea is AFFIRMED.

▮ Clark asserts his plea agreement was rejected by the court and he should have been allowed an opportunity to withdraw his plea as per Fed.R.Crim.P. 11(e)(4).

---

5. The record has been shipped to the Northern District were it is commingled with other records involving a larger investigation file.

We reject that contention because we find the plea agreement does not lend itself to the Rule 11(e)(4) provision.[6] The plea agreement itself establishes various conditions for Clark to meet including testifying in pending governmental investigations and paying a certain amount of restitution. If these conditions were met the government promised, among other things, to limit the charge against Clark, not to begin prosecution of Clark's wife, and not to seek any additional assets. The agreement ended:

> The United States has made no agreement with FRANCIS ALLAN CLARK or his counsel concerning any possible sentence as this matter is exclusively within the province of the court.

Additionally, in open court the judge made it very clear to Clark that the plea agreement was not binding upon the court.

The agreement between the parties falls under Rule 11(e)(1)(B). Subsection (B) is unique with its built in recognition of the nonbinding nature of a proposed sentence over a court. The Advisory note to Rule 11(e)(2) states the recognition provision renders subdivision (e)(3)'s acceptance provision inapplicable as well as subdivision (e)(4)'s opportunity to withdraw the guilty plea if a court rejects the plea. The Advisory note also seeks a record indicating awareness on the part of the defendant. The district judge certainly made Clark aware of the agreement's nonbinding nature before he took Clark's guilty plea,[7]

and therefore Clark had no right to withdraw his plea.

*Sentence of restitution*

■ The district court ordered Clark to pay $2,000,000 in restitution pursuant to the Victim and Witness Protection Act, 18 U.S.C.A. §§ 3579, 3580 (West 1985) ("VWPA"), in addition to the restitution he paid to satisfy his plea agreement. Clark only pled guilty to four counts of aiding and abetting false statements to a federally insured savings and loan institution. According to the plea agreement and information these charges only applied to 4 out of 22 loan applications which represented the funding for the Brodsky tract. Even though the government and the court consented to the plea agreement, the court required restitution based upon losses suffered from the entire project.

The Supreme Court in *Hughey v. United States*, — U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) limited the restitution a court may grant under the VWPA to the losses arising out of the "specific conduct that is the basis of the offense of conviction." *Id.* at ——, 110 S.Ct. at 1981, 109 L.Ed.2d at 413. The government in *Hughey* expressed some concern that the wide spread use of plea bargaining could undermine the ability of victims to fully recover for losses due to charges being dropped in order to obtain a guilty plea on one or more other charges. *Id.* at ——, 110 S.Ct. at 1984, 109 L.Ed.2d at 418. The Supreme

---

**6.** We must look at the plea agreement to see which of Rule 11(e)(1)'s provisions apply. This will help guide us through the rest of Rule 11(e).

Rule 11(e)(1) In General. The attorney for the government and the attorney for the defendant ... may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

**7.** THE COURT: Do each of you understand and know that the court is not bound by this plea agreement?

MR. CASPERONE: Yes, Your Honor.

THE COURT: Mr. Clark?

MR. CLARK: Yes, sir.

THE COURT: In other words, this is between you—each of you, between you and the Government, not the court; do you understand that?

MR. CASPERONE: Yes, sir.

MR. CLARK: Yes, sir.

THE COURT: It does not have any effect upon the court's right to sentencing, do you understand what sentence might be imposed?

MR. CASPERONE: Yes, your honor.

MR. CLARK: Yes, sir.

THE COURT: Knowing that, both of you still wish to enter a plea of guilty; is that correct?

MR. CLARK: Yes, sir.

Court found that argument unpersuasive. "The essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses. Nothing in the statute suggests that Congress intended to exempt victims of crime from the effects of such a bargaining process." *Id.* If the government's main purpose is restitution for victims, then any plea they are willing to agree to must make this a consideration.

The government also contends we must look to the introduction of the information which describes the full scope of the charges for which Clark may have been indicted. The government therefore asserts that since these charges all suggest the $2,000,000 restitution is reasonable, the district court did not err by granting the restitution. This court has already had the opportunity to interpret *Hughey.* In *United States v. Cockerham,* 919 F.2d 286 (5th Cir.1990), the defendant plead guilty to four of eighteen counts, yet the restitution was based upon the losses from each of the eighteen counts for which he was indicted. We held restitution based on offenses which a defendant is not convicted for is inappropriate. *Id.* at 288. The parties agreed, after negotiations, to what the charges would be; to allow the government to get more than originally was contemplated due to some introductory language runs contrary to *Hughey* and *Cockerham.* Offenses of conviction should be clear and not implied. Clark only pled guilty to four counts; he may be held liable for restitution only for losses arising from those counts.

The four counts Clark pled guilty to concerned Brodsky tracts 20, 5, 4 and 16. Clark purchased the land for ninety one cents ($0.91) per square foot sold it with an over valued appraisal of $5.35 per square foot which justified a loan of $3.75 per square foot. We REMAND to the district court to determine the proper amount of restitution for losses caused from the four counts which Clark pled guilty.[8]

8. The record does not show how many square feet were contained in the four tracts of land or

### III. Conclusion

Because the *Carr* factors were met and Rule 11 did not require the district court to allow Clark to withdraw his plea of guilty, the district court's denial of Clark's motion to withdraw his plea is AFFIRMED. However, because the district court's order of restitution was not limited to losses arising from the offenses of conviction, we REMAND for a further determination of an appropriate restitutionary award in light of this opinion.

It is so ordered.

whether restitution should be calculated on the over valued price or the inflated loan price.