**UNITED STATES of America**

v.

**Gildardo ROSALES, Defendant.**

**No. EP–06–CR–1182–PRM–3.**

United States District Court,
W.D. Texas,
El Paso Division.

May 29, 2007.

Joseph W. Galenski, United States Attorney's Office, El Paso, TX, for United States of America.

John P. Calhoun, Asst. Federal Public Defender, El Paso, TX, for Gildardo Rosales.

***ORDER DENYING DEFENDANT'S MOTION FOR CONTINUANCE OF SENTENCING, TO COMPEL ACCESS TO EVIDENCE AND ALTERNATIVELY TO WITHDRAW GUILTY PLEA***

MARTINEZ, District Judge.

On this day, the Court considered (1) Defendant Gildardo Rosales's "Motion for

Continuance of Sentencing, to Compel Access to Evidence and Alternatively to Withdraw Guilty Plea," filed on April 24, 2007; (2) the Government's "Response to Defendant's Motion for Continuance of Sentencing, to Compel Access to Evidence and Alternatively, to Withdraw Guilty Plea," filed on April 25, 2007; (3) Defendant's "Memorandum in Support of Motion to Withdraw Guilty Plea," filed on May 3, 2007; and (4) the Government's "Response to Defendant's Memorandum in Support of Motion to Withdraw Guilty Plea," filed on May 10, 2007, in the above-captioned cause. In his Motion, Defendant asks the Court to require the Probation Officer to provide Defendant with "access to all reports, statements, documents, and evidence utilized in its sentence recommendations" and to continue the date of Defendant's sentencing hearing to allow his counsel to review the information, or in the alternative to allow him to withdraw his guilty plea. After due consideration of the parties' submissions and the arguments presented at an April 26, 2007 hearing, the Court is of the opinion that Defendant's Motion should be denied for the reasons set forth below.

## I. FACTS AND PROCEDURAL HISTORY

On May 24, 2006, the Grand Jury charged Defendant with conspiracy to possess a controlled substance, in violation of 21 U.S.C. §§ 841 and 846. The indictment charges Defendant with conspiring to possess with the intent to distribute 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. On December 20, 2006, Defendant pled guilty pursuant to a plea agreement in which the Government agreed not to pursue the charge as it involved methamphetamine. The Court scheduled a sentencing hearing for March 16, 2007, which it later reset for April 26, 2007. On April 24, 2007, Defendant's counsel filed the instant Motion.

In his Motion, Defendant argues that the Presentence Investigation Report ("PSR") prepared in his case:

> contains allegations that [Defendant] should be held liable as a co-conspirator for far larger amounts of contraband than he personally transported, based solely on the unsubstantiated claims of unnamed individuals of unknown reliability, and recommends a sentence of thirty years to life. This information had not previously been provided to [Defendant] or defense counsel, and he entered his guilty plea without knowledge of these reports.

Def.'s Mot. 1. Specifically, Defendant addresses the PSR's use of statements provided by unnamed sources in order to compute the quantities of drugs involved in the conspiracy; the PSR recommends that Defendant be held responsible for 16,181.4 kilograms of marijuana and 94.89 kilograms of cocaine. Defendant asks the Court to require the Probation Officer assigned to his case to provide Defendant with the reports relied upon in the PSR so that he may determine the reliability of any evidence against him and potentially call live witnesses at his sentencing hearing. In the alternative, he asks that the Court allow him to withdraw his guilty plea.[1]

---

1. It is unclear as to the relief that Defendant primarily requests: access to the additional information and a continuance of the sentenc-

ing hearing, or the withdrawal of his guilty plea. In his Motion, Defendant argues first for access to the additional information, and

## II. ACCESS TO EVIDENCE FOR SENTENCING HEARING

██ Defendant asks the Court to compel the Government to provide him with the statements of confidential informants which the Probation Officer relied upon in preparing the PSR. Defendant essentially argues that his involvement in drug trafficking was limited to three trips from El Paso to Fort Worth in 2005, but the PSR's recommended sentence is based on his alleged involvement with the broader drug trafficking activities engaged in by his brothers, co-defendants in this cause. Def.'s Mot. 2. While Defendant's counsel believes that the allegations set forth in the PSR are unreliable, he claims that he is unable to adequately test and contest the allegations if he is not afforded the opportunity to review the underlying statements provided to the Probation Officer by unnamed sources, or at least be informed of the sources' identities so that he may conduct his own investigation. *Id.* Defendant contends that "a refusal to allow him to view the evidence against him would violate his due process rights." *Id.*

██ Though provided with the opportunity to supplement his Motion, Defendant offers no legal authority in support of his argument that the Government must produce the statements or disclose the informants' identities.[2] While the statements do fall within the scope of the Jencks Act,

18 U.S.C. § 3500, the statute has no application here. The Jencks Act requires only that such statements be turned over to Defendant after a witness has testified against him. 18 U.S.C. § 3500(b).[3] *See also United States v. Martinez*, 151 F.3d 384, 390–91 (5th Cir.1998) ("The Jencks Act does not require production of a witness' statement until after the witness has testified on direct examination."). The Fifth Circuit has also recognized that the Jencks Act applies "only to those proceedings conducted for the purpose of ascertaining the guilt or innocence of a defendant." *United States v. Hodges*, 489 F.2d 212, 214 (5th Cir.1973). *See also United States v. Abdul–Malik*, 903 F.Supp. 550, 552 (S.D.N.Y.1995) ("While the plain language of § 3500 grants discovery rights to defendants who have proceeded to trial, it grants no rights to a defendant ... who pleaded guilty, thereby waiving his right to a trial and cross-examination." (internal citation omitted)). By pleading guilty, Defendant waived his right to receive these statements under the Jencks Act. Furthermore, the Court notes that the substance of the Jencks Act has effectively been incorporated into the Federal Rules of Criminal Procedure as Rule 26.2. However, Rule 26.2 is applied to sentencing proceedings only "[i]f a witness testifies at sentencing." FED.R.CRIM.P. 32(i)(2).

---

presents the plea's withdrawal only as an alternative. At the hearing conducted on April 26, 2007, however, Defendant's counsel argued primarily that Defendant should be permitted to withdraw his plea. In any event, the Court finds that both requests should be denied. The Court will address Defendant's arguments in the order presented in his Motion.

2. At the April 26, 2007, hearing, the Court asked Defendant to supplement his Motion with a memorandum addressing case law applicable to each request raised in the Motion.

Defendant's Memorandum is exclusively focused on the withdrawal of his guilty plea.

3. The Jencks Act provides, in relevant part, that:

After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. 18 U.S.C. § 3500(b).

Finally, the Court notes that the Sentencing Guidelines expressly contemplate that anonymous statements will be included in a defendant's PSR. *See* U.S. SENTENCING COMMISSION GUIDELINES MANUAL § 6A1.3 cmt. ("Out-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means." (citing *United States v. Rogers*, 1 F.3d 341 (5th Cir.1993))). Insofar as Defendant believes that the statements lack corroboration or that no good cause exists for non-disclosure of the informants' identities, he may argue that the statements should be excluded from the PSR.

## III. WITHDRAWAL OF DEFENDANT'S GUILTY PLEA

### A. Legal Standard

 Defendant moves in the alternative to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d). Rule 11(d) provides that a defendant may withdraw a guilty plea after the court accepts the plea if "the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d). The defendant bears the burden of establishing a fair and just reason. *United States v. Still*, 102 F.3d 118, 124 (5th Cir.1996). The Fifth Circuit has recognized seven factors to be considered in applying this standard:

1) Whether the defendant has asserted his innocence.

2) Whether the government would suffer prejudice.

3) Whether the defendant has delayed in filing his motion.

4) Whether withdrawal would substantially inconvenience the court.

5) Whether close assistance of counsel was present.

6) Whether or not the original plea was knowing and voluntary.

7) Whether the withdrawal would waste judicial resources . . . .

*United States v. Clark*, 931 F.2d 292, 294 (5th Cir.1991) (citing *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir.1984)). "No single factor or combination of factors mandates a particular result. Instead, the district court should make its determination based on the totality of the circumstances." *United States v. Badger*, 925 F.2d 101, 104 (5th Cir.1991). In its analysis, the Court need not make a finding as to each of the factors. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir.2003).

### B. Discussion

The Court will address each of the seven factors.

### (1) Whether the defendant has asserted his innocence

In his initial Motion and at the April 26, 2007, hearing, Defendant asserted only that he should not be held responsible for the quantities of drugs that were possessed by other members of the conspiracy to which he had pled guilty. In his Memorandum of Law, Defendant for the first time claims that he is asserting his innocence of the offense of conviction. Nonetheless, Defendant still does not contest that he conspired to possess a controlled substance with the intent to distribute, and that his offense involved at least 1000 kilograms of marijuana and five kilograms of cocaine. In fact, Defendant states that "he freely admits his guilt of the loads in which he was personally involved," and merely contends that he "pled guilty to the conspiracy charge without understanding the implications" of his sentence. Def.'s Mem. of Law 2. The Court thus understands Defendant as disputing only the quantities of drugs attributed to him for

the purposes of relevant conduct in computing his sentence under the advisory Sentencing Guidelines. Defendant does "not claim innocence as to the acts which support his conviction." *Badger*, 925 F.2d at 104. Rather, his argument "relates to the severity of the sentence to which he is exposed, not to his actual innocence of the underlying crime. His motion cannot be construed to be an assertion of innocence." *United States v. Moya*, 730 F.Supp. 35, 42 (N.D.Tex.1990) (asserting lack of responsibility for quantity of drugs distributed by the conspiracy, while conceding guilt of crime of conviction, does not justify plea's withdrawal, as a defendant "will have the opportunity to attack the accuracy of the information reported in the presentence report at the sentencing hearing"), *aff'd*, 968 F.2d 16 (5th Cir.1992). The Court thus finds that the first factor weighs substantially against Defendant.

#### (2) Whether the government would suffer prejudice

If the Court permits Defendant to withdraw his plea, the Government will be forced to go to trial, putting it to the burden of proceeding with a potentially complex case involving substantial documentary evidence and a number of witnesses that reside or are incarcerated outside of this district. Gov.'s Resp. to Def.'s Mem. of Law 4. While undesirable, these concerns do not constitute meaningful prejudice. *See* FED.R.CRIM.P. 32 advisory committee's note (examples of prejudice under prior version of Rule 11 include destruction of physical evidence, death of Government witness, lengthy trial of co-defendants held since date of the plea, and Government's dismissal of 52 witnesses from around the country and overseas in

reliance on the defendant's plea); *Clark*, 931 F.2d at 295 (examples of prejudice include "the difficulties in renewing an investigation long after it had been terminated, the absence from governmental service of several key governmental investigators and the fact that most of the records are no longer in a convenient form"). While there are several co-defendants in this cause, none have gone to trial, and there is no allegation that any of the evidence is unavailable or that any potential witnesses will be unable to testify. The second factor thus weighs in Defendant's favor.

#### (3) Whether the defendant has delayed in filing his motion

Defendant pled guilty on December 22, 2006, and Defendant's PSR was prepared on February 8, 2007; Defendant acknowledges that the PSR was available to him on that date. Def.'s Mot. 1. Yet Defendant's Motion was not filed until April 24, 2007—125 days after he pled guilty, 74 days after the preparation of the PSR, and 39 days after the original date scheduled for sentencing. In his Memorandum of Law, though, Defendant contends that there was no significant delay because the Motion "was filed approximately 20 days after service of the PSR." Def.'s Mem. of Law 3. Defendant apparently refers to the first Addendum to the PSR, which the Probation officer completed on April 5, 2007. In the Addendum, the Probation Officer addresses Defendant's objections regarding the quantity of drugs used to calculate Defendant's offense level, a four-level upward adjustment for Defendant's role as a leader/organizer in the offense, and the PSR's failure to recommend an adjustment for the acceptance of responsibility.[4]

---

4. That Defendant suggests that he only recognized the need to withdraw his plea after receiving the Probation Officer's response to his objections bolsters the Court's determination that he asserts a lack of responsibility with respect to the large quantities of drugs,

Even if the Court were to measure Defendant's delay from April 5, 2007, the Court finds unnecessary delay in the filing of Defendant's Motion. Defendant justifies the delay on the grounds of unsuccessful attempts to mediate the dispute with the Government and his need to travel to see and consult with Defendant. Def.'s Mot. 1; Def.'s Mem. of Law 3. Nonetheless, to wait twenty days after the completion of the Addendum to the PSR, and to file the Motion just two days before the rescheduled sentencing hearing, does not indicate a prompt request. *See Carr,* 740 F.2d at 345 (motion filed 22 days after plea was "not promptly filed").

*(4) Whether the withdrawal would substantially inconvenience the court & (7) Whether the withdrawal would waste judicial resources*

Addressing these related factors, the Government contends that a trial will be lengthy and complex, requiring the United States Marshals Service to transport and secure numerous incarcerated prisoners who will be called to testify. Gov.'s Resp. to Def.'s Mem. of Law 4. While the Court finds that withdrawal of the plea would cause some inconvenience to the Court and other interested entities, *see Carr,* 740 F.2d at 345 (rescheduling a trial expected to last two to three weeks "would have inconvenienced the court by disrupting its docket"), the Court finds that such inconvenience is not substantial. Given that the Government has pointed to no other forms of inconvenience or waste, the Court determines that these factors weigh slightly in Defendant's favor.

*(5) Whether close assistance of counsel was present*

Defendant's counsel contends that he failed to render close assistance because

but does not assert his innocence with respect

he "had grossly miscalculated the likely sentence and had communicated this calculation to [Defendant], and thereafter effectively twisted [Defendant's] arm to enter the plea." Def.'s Mem. of Law 3. However, Defendant and his counsel offer the Court no explanation of the nature of counsel's miscalculation and whether it stems from an incorrect assessment of the amount of drugs involved in the conspiracy or the possible sentencing adjustments that would apply under the Sentencing Guidelines.

At the outset, the Court notes that it has found no case in which the Fifth Circuit defines "close assistance," and therefore accepts Defendant's invitation to define it as something analogous to the constitutional guarantee of effective assistance. As the Fifth Circuit has recognized, effective counsel does not mean errorless counsel. *Kemp v. Leggett,* 635 F.2d 453 (5th Cir. 1981). While "a guilty plea may be invalid if induced by defense counsel's unkept promises," *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998), Defendant does not allege that his counsel promised that he would receive a particular sentence. Defendant and his counsel contend only that counsel gave an incorrect prediction of his potential sentence, and pressured him into pleading guilty on the basis of that prediction. It is well accepted that "a good faith but erroneous prediction of a sentence by a defendant's counsel" does not alone constitute ineffective assistance. *Johnson v. Massey,* 516 F.2d 1001, 1002 (5th Cir.1975); *see also Harmason v. Smith,* 888 F.2d 1527, 1532 (5th Cir.1989) (a "prediction, prognosis, or statement of probabilities ... does not constitute an 'actual promise.' ").

▮ Furthermore, the Court looks to the objective circumstances of Defendant's

to the offense of conviction.

entry of his plea rather than his counsel's own subjective beliefs regarding the effectiveness of his representation, as claims of ineffective assistance must be evaluated by objective criteria. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("defendant must show that counsel's representation fell below an objective standard of reasonableness"). Defendant confirmed his understanding that any opinion expressed to him by his lawyer as to his potential sentence does not bind the Court on various occasions. Defendant's plea agreement indicated his understanding that his counsel's estimate of his probable sentencing range "is not a promise, did not induce the guilty plea or this waiver [of the right to appeal the sentence], and does not bind the Government, the United States Probation Office, or the Court." Def.'s Plea Agreement 5. At his plea hearing, Defendant indicated his understanding that his counsel's opinion about a possible sentence was merely an opinion, and not a guarantee of the sentence to be imposed, Def.'s Plea Hr'g Tr. 35–36, and that while he was unaware of the sentence that the Court would impose, pursuant to his plea agreement he nonetheless waived his right to appeal that sentence, *id.* at 24. The Court credits these statements by Defendant, as he "has failed to overcome the presumption of veracity that attaches to statements made under oath in open court." *United States v. Armenta,* 126 Fed.Appx. 204, 205 (5th Cir.2005).

Furthermore, while Defendant's counsel now contends that he pressured his client into pleading guilty by instructing him "that he needed to say 'yes' to all the appropriate questions and to enter whatever answers were necessary to make the plea go through," Def.'s Mem. of Law 3, the Court also reviewed the possibility of such pressure at Defendant's plea hearing. Defendant expressed his satisfaction with his counsel's representation, and indicated that no one had forced him to plead guilty against his will, that no one had threatened him or put pressure on him to get him to plead guilty, that it was his intention to plead guilty because he was in fact guilty, and that he was unaware of the sentence to be imposed by the Court. Def.'s Plea Hr'g Tr. 17–18, 24, 25. "The defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity." *Clark,* 931 F.2d at 295.

While Defendant alleges that his counsel gave him an inaccurate estimate of his sentence and pressured him to plead guilty, the Court's thorough review of the plea agreement and its Rule 11 colloquy made clear to Defendant that his counsel's opinions were merely opinions and sufficiently satisfied the Court that Defendant entered his plea on his own accord. While Defendant's counsel was unable to attend Defendant's plea hearing, Defendant was represented by another attorney from the Office of the Federal Public Defender, and expressly indicated his satisfaction with the substitution to the Court. Def.'s Plea Hr'g Tr. 6. The Court thus finds that Defendant had the close assistance of counsel in entering his plea, and the fifth factor weighs against Defendant.

*(6) Whether the original plea was knowing and voluntary*

Finally, the Court turns to Defendant's contention that his plea was not knowing and voluntary, in that it was made without "knowledge of the relevant circumstances and likely consequences of the plea." Def.'s Mem. of Law 4. Defendant argues that "it cannot be said that the Defendant's plea met this standard when he was wholly unaware of the fact that he was pleading to a conspiracy offense which involved over 16,000 kilograms of marijuana

and would carry a thirty year sentence, rather than merely transporting three loads." *Id.*

### a. Defendant's knowledge of the maximum possible sentence

■ "For a plea to be knowing and voluntary, the defendant must be advised of and understand the consequences of the [guilty] plea." *United States v. Gaitan,* 954 F.2d 1005, 1011 (5th Cir.1992) (alteration in original) (internal quotation omitted). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as [Defendant] understood the length of the time he might possibly receive, he was fully aware of his plea's consequences." *Barbee v. Ruth,* 678 F.2d 634, 635 (5th Cir.1982); *see also Gaitan,* 954 F.2d at 1012 (same).

The record shows that Defendant was informed of the maximum possible sentence in his case on several occasions. Defendant's plea agreement specifically indicates that the range of punishment "is a term of imprisonment of not less than ten (10) years or more than life...." Def.'s Plea Agreement 2. The plea agreement provides that "[t]he Defendant is aware that any sentence imposed will be up to the maximum allowed by statute for the offense(s) to which the Defendant is pleading guilty." *Id.* at 4. The plea agreement also states that "the Defendant understands that the U.S. S.G. is advisory and that the Court may take other factors into account on sentencing which could result in a greater or lesser sentence than the sentencing range calculated under the U.S. S.G." *Id.* at 2.

While Defendant's counsel may have given Defendant an inaccurate or unrealistic prediction of his sentence, Defendant's plea agreement states that:

[t]he Defendant understands and agrees that any estimate of the probable sentencing range that may be received from defense counsel, the Government, or the United States Probation Office is not a promise, did not induce the guilty plea or this waiver, and does not bind the Government, the United States Probation Office, or the Court. In other words, the Defendant understands that the Defendant may not challenge the sentence imposed by the District Court, even if it differs substantially from any sentencing range estimated by defense counsel....

*Id.* at 5.

Furthermore, at his plea hearing, the Court explained that the statutory maximum penalty that the Court could impose on Defendant "would be a period of imprisonment of not less than 10 years or more than life, a fine not to exceed four million dollars, supervised release of at least five years, and a one hundred dollar payment, which money goes to the Crime Victims Fund." Def.'s Plea Hr'g Tr. 21. Defendant responded that he understood. *Id.* The Court also explained the advisory nature of the Sentencing Guidelines. *Id.* at 21–22. As discussed above, the Court explained to Defendant that any opinion expressed by his lawyer regarding his possible sentence "is only an opinion. It's not a guarantee about what I am going to give you at sentencing." *Id.* at 36. Defendant indicated that he understood. *Id.* Finally, Defendant was informed of the other consequences of a guilty plea to a felony-level offense, such as the loss of his eligibility to sit on a jury, to vote, to run for office or hold office, or to possess weapons. *Id.* at 37–38.

It is undisputed that Defendant "was fully aware of his potential prison term and fine." *United States v. Young,* 981 F.2d 180, 184 (5th Cir.1992). Prior to

entering his plea, Defendant was clearly informed of, and acknowledged, the maximum sentence which could be imposed upon him and the various other consequences that would result from a guilty plea. Although he may not have expected such a severe sentence as that proposed in the PSR, he was well aware of the possible consequences, thus making his plea knowing and voluntary.

### b. Defendant's knowledge of the quantity of drugs involved

Finally, the Court considers Defendant's contention that his plea was not knowing and voluntary because he was unaware of the nature of the offense charged or the amount of drugs involved. Defendant contends that "he was wholly unaware of the fact that he was pleading to a conspiracy offense which would carry a thirty year sentence, rather than merely transporting three loads. In fact, at the plea hearing, he had expressed his strong disagreement with the amounts the government claimed." Def.'s Mem. of Law 4. Defendant's argument fails for two reasons.

First, the Court reviewed the elements of Defendant's offense with him at the plea hearing, expressly indicating that it was a conspiracy offense. The Court explained to Defendant that Count 1 charged him "with the offense of conspiracy to possess a controlled substance with the intent to distribute, specifically, 1000 kilograms or more of marijuana and five kilograms or more of cocaine." Def.'s Plea Hr'g Tr. 30. The Court explained that a conviction under that count would require the Government to show:

> that you and at least one other person, directly or indirectly, reached an agreement to possess a controlled substance. That the substance was, in fact, marijuana and cocaine. That you knew of the unlawful purpose of the agreement.

And that you joined into the agreement willfully, that is, with the intent to further the unlawful purpose. And that the overall scope of the conspiracy involved at least 1,000 kilograms of marijuana and five kilograms of cocaine.

*Id.* at 30–31. Defendant indicated that he understood those elements. Id. at 31.

Second, the record shows various times at which Defendant was informed of and confirmed his knowledge of the amounts of drugs attributed to the conspiracy at issue. At a preliminary hearing before the United States Magistrate Judge on June 22, 2006, DEA Agent Robert Apodaca testified that the alleged conspiracy involved 24,000 pounds of marijuana (approximately 10,886 kilograms) and 117 kilograms of cocaine. Def.'s Prelim. Hr'g Tr. 6. Defendant subsequently entered into a plea agreement in which he admitted "that the facts set out in the attached factual basis as alleged by the Government are true and correct." Def.'s Plea Agreement 6. The factual basis provided that:

> From 1997 until May 2006, Anjel Rosalez, Gildardo Rosales, Juan Rosalez Jr., Armando Rosalez and others agreed to transport and distribute controlled substances.... Based upon information provided by several cooperating witnesses and through Court authorized Wire Intercepts, it was determined by the Drug Enforcement Administration that the defendant Gildardo Rosalez and others were responsible for the distribution of in excess of 24000 pounds of marihuana, and 89 kilograms of cocaine ... from El Paso, Texas to other cities in the United States.

*Id.* at 7.

At his plea hearing, Defendant acknowledged that by pleading guilty he was admitting to having committed "the offense of conspiracy to possess a controlled substance with the intent to distribute, specifi-

cally, 1000 kilograms or more of marijuana and five kilograms or more of cocaine." Def.'s Plea Hr'g Tr. 30. Assistant United States Attorney Joseph Galenski then read the factual basis, as set forth above. *Id.* at 44–45. When the Court asked if Defendant agreed with the information, Defendant stated that "Well, other than the amount of the substance. I don't know where that figure came from." *Id.* at 45. Despite signing a plea agreement in which he admitted to the allegations set forth in the attached factual basis, Defendant thus disputed the amount of drugs attributed to the conspiracy at the time of his plea. Nonetheless, this does not affect the Court's determination that his plea was knowing and voluntary, and indicates Defendant's clear awareness of the amount of drugs that the Government sought to attribute to the conspiracy. While disputing the amounts described in the factual basis, Defendant proceeded to admit that his offense did involve at least 1000 kilograms of marijuana and five kilograms of cocaine—the amounts charged in his Indictment. *Id.* at 47. At no time did he dispute the amounts necessary to support a conviction of the offense charged, and Defendant may still contest the quantity of drugs attributed to the conspiracy at the time of his sentencing hearing.

Nonetheless, Defendant argues that his plea was unknowing and involuntary because in its discussion with Defendant, the Court inaccurately stated that "[a]t the time of sentencing, the amount, if it is a thousand kilograms or more, you are going to be in the same base offense level, basically." *Id.* at 45. While any defendant whose offense involves at least 1000 kilograms of marijuana is eligible for life imprisonment, the base offense level for such quantities ranges from 32 to 38. U.S. Sentencing Guidelines Manual § 2D 1.1(c) (2007). Defendant contends that this mistaken advice left him "with a belief

that his sentence would be far below what is actually recommended." Def.'s Mem. of Law 4.

Though the Court was required to inform Defendant only of the maximum sentence possible, the Court sought to ensure that Defendant was aware of the quantities of drugs that the Government sought to attribute to him as well as the fact that the attribution of quantities larger than those charged in his indictment would affect his eventual sentence. The Court's intended admonishment was not accurately conveyed to Defendant, as the Court mistakenly indicated that the Defendant's potential base offense level would be the same regardless of the attribution of a larger quantity. The Court should instead have stated that the PSR's recommendations regarding relevant conduct would have no effect on the statutory maximum sentence, rather than the base offense level.

The Court's unintentional misstatement about the mechanical application of the Sentencing Guidelines notwithstanding, the Court was absolutely clear about the maximum possible sentence that Defendant could receive, as discussed above. Furthermore, Defendant was informed both in his plea agreement and by the Court at his plea hearing that the Sentencing Guidelines are advisory and do not bind the Court. Def.'s Plea Agreement 2; Def.'s Plea Hr'g Tr. 21–22. The Court explained to Defendant that at the time of sentencing it could impose a sentence either above or below the proposed range in the Sentencing Guidelines. Def.'s Plea Hr'g Tr. 34. While the Court suggested that the quantity of drugs would not affect a defendant's base offense level under the Sentencing Guidelines, it hardly indicated that the quantity was irrelevant to the sentence or informed Defendant of what his eventual sentence would be. Instead, the Court took numerous opportunities to

explain that no one—not the Court, Defendant's counsel, or the prosecutor—was then aware of the terms of Defendant's sentence. There is no meaningful reason to believe that the Court's inaccurate statement impacted Defendant's decision to plead guilty. *See Clemons v. Armontrout,* 921 F.2d 187, 191 (8th Cir.1990); *Long v. United States,* 883 F.2d 966, 969 (11th Cir.1989) ("[I]f the court's misstatement was unintentional, and the convicted offender cannot show prejudice as a result of the misstatement—that it was a material factor in his decision to plead guilty—he will not be granted relief."). The Court thus finds that Defendant's plea was entered knowingly and voluntarily.

### C. Conclusion

After due consideration of the relevant factors, the Court finds that Defendant has not shown a fair and just reason for the withdrawal of his guilty plea. While the withdrawal would not prejudice the Government, substantially inconvenience the Court, or result in a significant waste of judicial resources, the remaining factors weigh against the plea's withdrawal. Defendant waited until two days before his sentencing hearing in order to file his Motion, yet fails to offer meaningful justification for the delay. He does not assert his innocence of the conspiracy underlying his conviction, but instead disputes his responsibility over the larger quantities of drugs attributed to the conspiracy for purposes of his sentence. Furthermore, he received adequate assistance from his counsel, and subsequently entered into a valid guilty plea, knowingly and voluntarily, with full awareness of the consequences that would result at the time of his sentencing. As the Fifth Circuit explained in *United States v. Carr,*

> [t]he rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain withdrawal if he believes that he made a bad choice in pleading guilty.

740 F.2d at 345. Since Defendant has failed to demonstrate a fair and just reason for withdrawal, the Court will deny his motion to withdraw his plea.

## IV. CONCLUSION

As discussed above, Defendant asks the Court to compel production of the statements used by the Probation Officer in preparing Defendant's PSR, but provides the Court with no legal authority in support of his request. The Court is thus of the opinion that Defendant's request should be denied. The Court further finds that, after considering the totality of the circumstances, Defendant has not satisfied his burden of showing a fair and just reason for the Court to allow the withdrawal of his guilty plea pursuant to Rule 11(d).

Accordingly, **IT IS ORDERED** that Defendant Gildardo Rosales's "Motion for Continuance of Sentencing, to Compel Access to Evidence and Alternatively to Withdraw Guilty Plea" (Docket No. 128) is **DENIED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **SET** for a sentencing hearing in Courtroom 2, on the First Floor of the United States Courthouse, 511 E. San Antonio, El Paso, TX, on ———————, 2007, at. ———————.