# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-51101

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

ALARCON WIGGINS, also known as Alarcon Allen Wiggins, also known as Alarcon Tha Don,

> Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
January 6, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:11-CR-2420-1

Before KING, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Alarcon Wiggins pleaded guilty to federal charges and was sentenced to 212 months of imprisonment. On appeal, Wiggins argues that the district court impermissibly participated in plea negotiations in violation of Federal Rule of Criminal Procedure 11(c)(1), and therefore, his guilty plea should be vacated. Wiggins also argues that the district court abused its discretion when it denied his motion to withdraw his guilty plea.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-51101

For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant–Appellant Alarcon Wiggins was charged with, *inter alia*, conspiracy to obtain the labor and services of a person by force, in violation of 18 U.S.C. § 1594(b), and the transportation of individuals in interstate commerce with the intent that such individuals engage in prostitution, in violation of 18 U.S.C. § 2421. Trial was scheduled to begin on August 12, 2013. In May 2013, Wiggins rejected a plea offer made by the Government.

On June 27, 2013, the district court held a status conference to discuss certain pretrial matters. During the status conference, Wiggins's counsel advised the district court that Wiggins had rejected the Government's plea offer. Wiggins's counsel stated that he wanted to inform the district court on the record that the plea offer was rejected and "also to inquire if there are any potential deadlines in this case." After a brief discussion about other issues, the district court turned back to the topic of the rejected plea offer. The district court ordered Wiggins's counsel to question Wiggins on the record about the plea agreement because "the record needs to reflect that [Wiggins] understood what you said." During the ensuing questioning, the prosecutor interrupted because she wanted the record also to reflect the potential sentences Wiggins would face should he be convicted at trial, including the fact that at least three of the counts carried mandatory minimum sentences of 15 years. The prosecutor then proceeded to list the counts and their corresponding sentences, as well as describing which counts were "stacking counts."

It was at this point that the district court asked Wiggins whether he understood what "stacking counts" were. After Wiggins replied in the negative, the district court engaged in a lengthy discussion with Wiggins about the potential sentences that he faced. During this discussion, the district court twice explained that Wiggins could only be sentenced to a maximum of 20 years

2

under the plea offer, but if he proceeded to trial and were to be convicted, he could be sentenced to life in prison. The district court also told Wiggins three times that it was "important" for him to understand the plea offer and how sentencing works. The district court even created a hypothetical "scenario" to show Wiggins how consecutive sentencing would work if he were to be convicted after trial on only two of the many counts that he was facing. The district court also noted that the decision to plead guilty was Wiggins's decision to make and that the district court was ready to try the case if he chose not to plead guilty.

On August 8, 2013, Wiggins pleaded guilty to violations of 18 U.S.C. § 1594(b) and 18 U.S.C. § 2421 pursuant to a plea agreement in which the Government agreed to dismiss the other counts. During rearraignment, Wiggins swore that he understood the charges against him. Wiggins also testified that his plea was voluntary; he was not forced, threatened, or coerced into pleading guilty; and he was not induced to plead guilty by any promises or offers other than the plea agreement before the court. Finally, Wiggins testified that he agreed with the Government's oral summary of the written factual basis as well as the actual written factual basis.

On August 23, 2013, Wiggins mailed a letter to the district court stating that he wanted to withdraw his guilty plea. In this letter, which was received by the district court on August 28, Wiggins stated that his counsel had pressured him to plead guilty by threatening him with life imprisonment, potential charges against him in another jurisdiction, and potential charges against his mother. Wiggins's counsel subsequently moved to withdraw, which was granted and new counsel was appointed for Wiggins. On September 24, 2013, Wiggins's new counsel filed a motion to withdraw the guilty plea. In the motion, Wiggins claimed that his guilty plea was induced by an informal agreement with the Government to release Shelby Smith and Roxane Mitchell,

who were codefendants and the mothers of his children.  Smith and Mitchell had both previously pleaded guilty pursuant to plea agreements and were released from custody on August 20, 2013.

On October 3, 2013, the district court held a hearing on Wiggins's motion to withdraw his guilty plea.  During the hearing, Wiggins testified that he was innocent but nevertheless pleaded guilty based on a combination of the reasons given in his initial letter to the court and his later motion to withdraw.  On October 30, 2013, in a written order, the district court weighed the seven factors articulated in *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984), and concluded that, based on a totality of the circumstances, Wiggins's motion to withdraw his guilty plea should be denied.

The district court sentenced Wiggins to 212 months of imprisonment and 10 years of supervised release.  Wiggins timely appealed.

## II.  THE DISTRICT COURT'S COMMENTS AT THE STATUS CONFERENCE

Wiggins contends that the district court improperly participated in plea negotiations in violation of Federal Rule of Criminal Procedure 11(c)(1).  Because Wiggins "failed to raise an objection to the district court's alleged improper participation in plea negotiations, [our] review is for plain error." *United States v. Larrier*, 648 F. App'x 441, 442 (5th Cir. 2016).  Under plain error review, Wiggins must show that the district court's comments constituted a clear or obvious error that affected his substantial rights.  *See Puckett v. United States*, 556 U.S. 129, 135 (2009).  If Wiggins makes this showing, we have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Rule 11(c)(1) prohibits a district court from participating in plea

No. 13-51101

negotiations.[1] *United States v. Pena*, 720 F.3d 561, 570 (5th Cir. 2013). We have described Rule 11(c)(1)'s prohibition as being a "bright line rule" and creating "an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process." *Id.* (first quoting *United States v. Rodriguez*, 197 F.3d 156, 158 (5th Cir. 1999); then quoting *United States v. Adams*, 634 F.2d 830, 835 (5th Cir. Unit A 1981)); *see also United States v. Hemphill*, 748 F.3d 666, 672 (5th Cir. 2014) (describing Rule 11(c)(1) as a "blanket prohibition" that "admits of no exceptions"). This bright line rule serves three important purposes: (1) "it diminishes the possibility of judicial coercion of a guilty plea, regardless whether the coercion would actually result in an involuntary guilty plea;" (2) a judge's participation in plea negotiations "is apt to diminish the judge's impartiality" because "the judge may feel personally involved, and thus, resent the defendant's rejection of his advice;" and (3) a judge's participation "creates a misleading impression of [the judge's] role in the proceedings" because the judge appears less like a "neutral arbiter" and "more like an advocate for the agreement." *United States v. Daigle*, 63 F.3d 346, 348 (5th Cir. 1995). "In light of these considerations, we have not hesitated to find a Rule 11 error even when the court's participation is minor and unintentional." *United States v. Ayika*, 554 F. App'x 302, 305 (5th Cir. 2014) (per curiam).

Here, Wiggins argues that the district court violated Rule 11(c)(1) during the June 27 status conference by engaging in an extended discussion with Wiggins about the plea offer, which included the district court's contrasting the lower sentencing under the plea offer with the potentially higher sentencing that he could receive if convicted at trial, advising him repeatedly that it was

---

[1] "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court *must not participate* in these discussions." Fed. R. Crim. P. 11(c)(1) (emphasis added).

No. 13-51101

"important" that he understand the plea offer, and creating a "scenario" of his potential sentencing post-trial. We do not doubt that the district court was motivated by a genuine desire to help Wiggins understand the federal sentencing framework. However, the best practice under these circumstances would have been to ask Wiggins to confer with his counsel to ensure that he understood the plea offer and the potential sentencing ramifications should he be convicted at trial, and in fact, the Government agreed during oral argument that this would have been the better practice. By doing so, the district court would have avoided any risk of violating Rule 11(c)(1) and appearing implicitly to suggest that the district court favored a plea agreement. *Cf. Hemphill*, 748 F.3d at 675 ("Here, however, defense counsel had already indicated on the record that he had fully discussed the plea offer with [the defendant]. The district court's comments then went much farther than documenting the plea offer or informing [the defendant] of its terms, as contemplated in *Frye*.").

However, we need not decide whether the district court's comments here amounted to a clear or obvious violation of Rule 11(c)(1). Even assuming, arguendo, that the district court erred, Wiggins has failed to demonstrate that the error affected his substantial rights. To satisfy this prong of plain error review, the error must have affected the outcome of the proceedings in the district court. *Pena*, 720 F.3d at 573. In the context of a defendant attempting to vacate his guilty plea because of a Rule 11(c)(1) violation, the defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

Wiggins has failed to establish a reasonable probability that he would not have pleaded guilty but for the district court's allegedly improper comments. First, Wiggins did not plead guilty until nearly six weeks after the district court's comments during the June 27 status conference. The six weeks

6

No. 13-51101

time gap here is far greater than the amount of time that elapsed in any of our prior cases in which we have found that a temporal proximity between a district court's improper participation and a defendant's guilty plea supported the finding that the defendant would not have pleaded guilty but for the district court's improper participation. *See id.* at 574 ("Just five days later, [the defendant] pled guilty—a temporal proximity that supports a finding of prejudice."); *Ayika*, 554 F. App'x at 307–08 (finding that the defendant had sufficiently demonstrated that the error affected his substantial rights, in part, because he agreed to plead guilty "[t]he day immediately after the district court's statements"). Second, Wiggins has failed to point to anything else in the record supporting his argument that he would not have pleaded guilty but for the district court's comments. *See United States v. Holmes*, 614 F. App'x 750, 751 (5th Cir. 2015) (per curiam) ("Although [the defendant] claims that he pleaded guilty because of the trial court's comments, he cites to nothing in the record that supports his claim. The record reflects that he waited three months after the court's comments to enter his guilty plea, and he testified at his rearraignment that no one had threatened, coerced, or intimidated him to plead guilty."). Indeed, Wiggins's arguments in his motion to withdraw his guilty plea contradict the argument that he would not have pleaded guilty but for the district court's allegedly improper participation in plea negotiations. For example, Wiggins argued in that motion that he only pleaded guilty because of an informal agreement with the Government about the release of Smith and Mitchell.[2]

Thus, Wiggins has failed to demonstrate that, under plain error review,

---

[2] Additionally, Wiggins appears to argue that the district court's comments were so inherently coercive that there is at least a reasonable probability that he would not have pleaded guilty but for the district court's comments. However, even if such a situation could arise, the district court's comments here did not rise to such an inherently coercive level.

his guilty plea should be vacated.

### III.  MOTION TO WITHDRAW THE GUILTY PLEA

Wiggins also challenges the district court's denial of his motion to withdraw his guilty plea.  After a district court accepts a defendant's guilty plea but prior to sentencing, the district court may allow the defendant to withdraw his guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  We review the denial of a motion to withdraw a guilty plea for abuse of discretion.  *United States v. McKnight*, 570 F.3d 641, 645 (5th Cir. 2009).  We consider seven factors in determining whether the district court should have allowed the defendant to withdraw his guilty plea:

> (1) whether or not the defendant has asserted his innocence; (2) whether or not the government would suffer prejudice if the withdrawal motion were granted; (3) whether or not the defendant has delayed in filing his withdrawal motion; (4) whether or not the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether or not the original plea was knowing and voluntary; and (7) whether or not the withdrawal would waste judicial resources.

*Carr*, 740 F.2d at 343–44 (footnotes omitted).  "Although this illustrative list should be considered, the ultimate decision should be based on the 'totality of the circumstances.'"  *United States v. McElhaney*, 469 F.3d 382, 385 (5th Cir. 2006) (quoting *Carr*, 740 F.3d at 344).  On appeal, Wiggins advances arguments for all seven of the *Carr* factors.  We address each factor in turn.

For the first factor, Wiggins argues that he strongly asserted his innocence.  However, as the district court reasoned, Wiggins's bare assertion of his innocence was contradicted by his sworn admission during rearraignment that the factual basis of his conviction was true.  Therefore, the district court did not abuse its discretion in finding that this factor lends no support to the motion.  *See, e.g.*, *McKnight*, 570 F.3d at 649 ("Because 'solemn

declarations in open court carry a strong presumption of verity,' the district court did not abuse its discretion in placing little weight on [the defendant's] assertion of innocence." (quoting *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001))); *United States v. Myles*, 623 F. App'x 178, 179 (5th Cir. 2015) (per curiam) ("In finding [the defendant's] assertions of innocence unpersuasive, the district court was entitled to rely on those solemn declarations over her initial statement . . . .").

As to the second factor, Wiggins concedes that there would be at least some inconvenience to the Government should the motion be granted.  The district court found that this factor weighed in favor of denying the motion in part because this was a large and complex case, the Government had already notified the potential witnesses that their testimony would no longer be needed, and the Government's two lead prosecutors were leaving government employment.  Based on those considerations, the district court did not abuse its discretion in finding that this factor weighed against granting the motion. *See United States v. Clark*, 931 F.2d 292, 294–95 (5th Cir. 1991).

Regarding the third factor, Wiggins contends that he promptly notified the district court of his desire to withdraw his guilty plea by mailing a letter to the district court 15 days after he entered his guilty plea.  According to Wiggins, the district court erred in considering the date that it received his letter (*i.e.*, five days after the letter was mailed) and the even later date that the motion to withdraw was actually filed.  But even if we accept that the amount of delay should be measured from the time that Wiggins mailed the letter, the 15-day delay still weighs against granting the motion under these circumstances. *See Carr*, 740 F.2d at 345 (finding that a motion to withdraw was not promptly filed following a 22-day delay because "[t]he purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he a made a bad choice

in pleading guilty"); *United States v. Ard*, 298 F. App'x 337, 339–40 (5th Cir. 2008) (per curiam) (finding that a 19-day delay weighed against granting a motion to withdraw).

As to the fourth factor, the district court found that having to repeat the initial jury selection process would inconvenience the court "but not in a significant way." Both parties agree that the district court did not find under this factor that, should the motion be granted, there would be a "substantial inconvenience to the court." However, even if this factor weighs in favor of granting the motion under these circumstances, it does not "tip the scales to the extent necessary to find an abuse of discretion." *See United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991).

Wiggins argues the fifth and sixth factors together on appeal. The district court engaged in a detailed analysis regarding whether close assistance of counsel was available and whether Wiggins's guilty plea was knowing and voluntary. On appeal, Wiggins largely does not contest the district court's reasoning for these factors. And Wiggins concedes that he did "not specifically contest[] either of these factors" in the district court. Instead, Wiggins argues that "both counsel's assistance and the voluntariness of his plea were tainted because counsel had made Wiggins believe that, if he pleaded guilty, the government would agree to release Smith and Mitchell." Additionally, Wiggins contends that there was substantial evidence of an informal agreement with the Government that, if Wiggins pleaded guilty, the Government would release Smith and Mitchell based both on his testimony and the fact that Smith and Mitchell were actually released.

The argument that Wiggins was coerced into pleading guilty because of an informal agreement with the Government implicates the sixth factor, as Wiggins's reply brief appears to recognize by discussing this argument only in the context of the sixth factor. Although this court takes "'special care' in

reviewing the voluntariness of 'guilty pleas made in consideration of lenient treatment as against third persons,'" *see United States v. Harrison*, 777 F.3d 227, 236 (5th Cir. 2015) (quoting *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979)), the district court did not err in finding that there was no informal agreement with the Government that coerced Wiggins into pleading guilty, *see Lampazianie*, 251 F.3d at 524 ("We have scoured the record and can find no shred of evidence to support [the defendant's] contention that he was somehow coerced into the plea agreement by threats to institutionalize his brother . . . ."). During rearraignment, Wiggins declared under oath that he was voluntarily pleading guilty and that he was not being forced, threatened, or coerced into pleading guilty. *See Lampazianie*, 251 F.3d at 524 ("[The defendant] declared—under oath—in open court that he had not been threatened or coerced in any way, and that he was entering the plea voluntarily and fully informed."). He also stated that there were no promises or offers that induced him to plead guilty other than the plea agreement before the court. Moreover, his testimony during the hearing on his motion to withdraw was somewhat inconsistent on whether there was an actual informal agreement with the Government to release Smith and Mitchell. At certain points, Wiggins stated that it was only his impression that there was an informal agreement but that nobody ever told him that there was an actual deal. And even if we were to credit Wiggins's assertion that there was an informal agreement with the Government, there is no evidence in the record that the Government threatened charges against Smith and Mitchell in bad faith such that this factor should weigh in favor of granting the motion. *See McElhaney*, 469 F.3d at 385–86 ("Where the prosecution has a good-faith basis to threaten charges against a third-party, a defendant's election to 'sacrifice himself for such motives' is not a basis to challenge the voluntariness of the plea." (quoting *Nuckols*, 469 F.3d at 569)); *see also Clark*, 931 F.2d at 295 ("Though [the

defendant] asserts the government coerced him to make the plea by threatening to indict his wife, there is no credible evidence that the government was insincere in considering whether to prosecute [his wife].”). Accordingly, the district court did not abuse its discretion in finding that the sixth factor weighed against granting the motion.[3]

Finally, Wiggins contends that the seventh factor weighs in favor of granting the motion. However, the district court declined to make specific findings about this factor because Wiggins had failed to demonstrate, based on the totality of the circumstances, that the motion should be granted. Given the weight of the other factors, the district court did not err in not addressing this factor. *See Badger*, 925 F.2d at 104 (“Although [the defendant] points out that the district judge did not make specific findings on each of the *Carr* factors, that circumstance does not establish that the district judge abused his discretion by denying [the defendant’s] motions.”).

In sum, based on the totality of the circumstances, the district court did not abuse its discretion in denying Wiggins’s motion to withdraw his guilty plea.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[3] To the extent that Wiggins’s argument can be interpreted as implicating the fifth factor (whether Wiggins had the close assistance of counsel), Wiggins similarly fails to demonstrate that the district court abused its discretion in finding that the fifth factor weighed against granting the motion, especially considering the other findings made by the district court about the assistance of counsel that are not contested on this appeal. *Cf. McKnight*, 570 F.3d at 648 (“We therefore cannot conclude that the district court abused its discretion by denying [the defendant’s] motion to withdraw his guilty plea on this basis.”).