# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 5, 2009

Charles R. Fulbruge III
Clerk

No. 08-30229

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

SEANTE J MCKNIGHT

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before O'CONNOR[*], Associate Justice (Ret.), and WIENER and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

On advice of counsel, Seante J. McKnight ("McKnight") pled guilty to one count of distribution of fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(A). Soon thereafter, McKnight expressed doubts regarding his guilty plea in letters addressed to the district court. The district court *sua sponte* ordered a competency examination. At a subsequent sentencing proceeding, McKnight moved to withdraw his guilty plea. After McKnight underwent multiple competency evaluations, the district court concluded that

[*] The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

McKnight was competent at the time he pled guilty and at the time of sentencing. The district court denied McKnight's motion to withdraw his guilty plea and sentenced McKnight to 295 months imprisonment. McKnight appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before the arrest that led to the proceedings below, McKnight was diagnosed with and treated for paranoid schizophrenia, delusions, and major depression at the East Jefferson Mental Health Center ("Center") in New Orleans, Louisiana. On June 1, 2005, while McKnight was undergoing treatment at the Center, agents with the Drug Enforcement Administration ("DEA") arranged a purchase of two and one-fourth ounces of cocaine base from McKnight through cooperation with a confidential source ("CS"). On June 2, 2005, McKnight met the CS and an undercover agent in a parking lot located at a Walgreens. McKnight handed the undercover agent a package containing 61.6 grams of cocaine base and the agent handed McKnight $1,500.

On February 17, 2006, a grand jury indicted McKnight with knowingly and intentionally distributing fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On September 27, 2006, McKnight pled guilty to one count of distribution of fifty grams or more of cocaine base in violation of § 841(b)(1)(A). In exchange for McKnight's guilty plea, the Government promised not to file a 21 U.S.C. § 851 recidivist bill and McKnight waived certain rights to appeal.[1] At the sentencing hearing, the district court

---

[1] McKnight argues that "the district court did not explain that the waiver included appeal of the conviction" and failed to ensure that McKnight fully understood his right to appeal and the consequences of waiving the right. The waiver in the plea agreement, however, does not foreclose McKnight's ability to appeal in the instant case. An incompetent defendant may not enter into a valid plea agreement. *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994) (citation omitted) ("It is a violation of [a defendant's] rights to due process to accept the guilty plea and conviction of a person who is mentally incompetent. A defendant can not waive this right."). Furthermore, a claim of ineffective assistance of counsel that directly relates to the validity of the plea agreement and the guilty plea is not encompassed in an appeal waiver. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).

explained that the statutory penalty for his crime was ten years to life imprisonment and that the court could impose the maximum possible sentence.

The next day, September 28, 2006, McKnight sent a letter to the district court where he expressed doubts regarding his decision to plead guilty. On October 6, 2006, the district court received another letter from McKnight and *sua sponte* ordered a psychological examination of McKnight. Dr. Rafael Salcedo ("Dr. Salcedo") met with McKnight once, and determined McKnight was not competent and likely suffered from a major psychiatric disorder: specifically, paranoid schizophrenia or another form of psychosis with delusional paranoia. Dr. Salcedo did not make a determination as to McKnight's sanity at the time of the offense, but discounted the possibility that McKnight was malingering. McKnight sent a third letter to the district court on October 16, 2006.

On October 25, 2006, McKnight's attorney, Michael Thiel, filed a motion to withdraw as defense counsel. The Federal Public Defender's Office was appointed to represent McKnight on October 30, 2006.

On October 31, 2006, the district court ordered McKnight transported to a federal medical facility for a determination of McKnight's competency to enter his prior guilty plea. Dr. Randall Rattan evaluated McKnight for fourteen days at the Federal Correctional Institution ("FCI") in Fort Worth, Texas. Dr. Rattan found McKnight to be incompetent. Dr. Rattan determined that McKnight had a factual understanding of the proceedings but his rational understanding of the proceedings was significantly influenced by delusional thinking that caused a "significantly distorted decision making process[ ] and impaired his ability to properly assist counsel." As per the report's recommendation, the district court ordered McKnight transferred to a Bureau of Prisons medical referral center for restoration of competency.

McKnight was sent to the Federal Medical Facility at Butner, North Carolina ("Butner"), for a 120-day evaluation period. The lead evaluator at

Butner was Dr. Robert E. Cochrane ("Dr. Cochrane"). On April 10, 2007, Butner issued a report concluding that McKnight was malingering and was now competent to stand trial. The district court scheduled the case for sentencing on June 13, 2007. At sentencing, McKnight orally moved to withdraw his guilty plea based on lack of competency at the time he pled guilty and ineffective assistance of counsel. McKnight asserted that Thiel promised him a low sentence and failed to advise McKnight that he would receive a career offender enhancement that increased his Sentencing Guidelines range to 262 - 327 months. McKnight claimed that if Thiel had informed him of this possibility he would not have pled guilty. The district court raised a concern as to whether McKnight was competent when he pled guilty on September 27, 2006–eleven days before Dr. Salcedo found McKnight incompetent.

The district court directed defense counsel to file a written motion to withdraw the guilty plea. McKnight was transferred back to Butner for an evaluation of his competence at the time he pled guilty. Dr. Cochrane again served as McKnight's lead evaluator and reported that McKnight refused to speak with him. On November 20, 2007, approximately fourteen months after McKnight pled guilty, Butner issued a final report concluding that McKnight was malingering and that he was competent at the time of his guilty plea. The report was based entirely on the transcript of the rearraignment (the proceedings where McKnight pled guilty) and McKnight's letters to the district court after the plea.

On December 19, 2007, the district court heard arguments regarding McKnight's competency, accepted the Butner reports, and later issued a written opinion finding McKnight competent at the time he pled guilty and at the present time. On January 9, 2008, the district court held a hearing regarding McKnight's motion to withdraw his guilty plea based on his ineffective assistance of counsel claim. The motion was denied.

The Presentence Investigation Report ("PSI") classified McKnight as a career offender, bringing his Sentencing Guidelines range to 262 - 327 months. On February 13, 2008, the district court adopted the PSI and sentenced McKnight to 295 months imprisonment. McKnight appeals.

## II. STANDARD OF REVIEW

A criminal defendant is permitted to withdraw his plea before sentencing if he provides a fair and just reason. FED. R. CRIM. P. 11(d)(2)(B). This Court reviews a district court's decision to deny a motion to withdraw a guilty plea for abuse of discretion. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003) (citing *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998) ("[A] district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence.")). In deciding whether the district court should have permitted McKnight to withdraw his guilty plea, this Court must consider seven factors: (1) whether McKnight asserted his innocence; (2) whether the Government would suffer prejudice if the withdrawal motion was granted; (3) whether McKnight delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to McKnight; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 339, 343-344 (5th Cir. 1984). The *Carr* factors are considered for the totality of the circumstances, and the district court is not required to make a finding as to each individual factor. *Powell*, 354 F.3d at 370 (citation omitted).

## III. DISCUSSION

McKnight's primary arguments in support of his motion to withdraw his guilty plea focus on the fifth and sixth *Carr* factors, but he does make arguments with respect to all seven *Carr* factors. We address each argument in turn.

## A. *Carr* Factor Five: Close Assistance of Counsel

As is explained above, one of the factors to be considered in assessing a motion to withdraw a guilty plea is whether the defendant received "close assistance of counsel." *Carr*, 740 F.2d at 343-44. Before the district court, McKnight framed his argument that he lacked close assistance of counsel as a "claim" of "ineffective assistance of counsel." *United States v. McKnight*, No. 06-0046, slip op. at 1 (E.D. La. Jan. 15, 2008). He also relied on precedents explicating the Sixth Amendment right to counsel. *Id*. at 3. The district court rejected McKnight's ineffective assistance "claim" and denied his motion to withdraw his guilty plea in part on that basis. Before us, McKnight again characterizes his close assistance of counsel argument as a claim of ineffective assistance.

Close assistance of counsel under Federal Rule of Criminal Procedure ("Rule") 11(d)(2)(B) and constitutionally ineffective assistance of counsel under the Sixth Amendment are distinct issues. The former is to be considered by a district court in the exercise of its discretion to allow or to disallow a defendant to withdraw his guilty plea. The latter presents a basis for invalidating a conviction (or sentence) secured in violation of a defendant's fundamental right to counsel. McKnight moved to withdraw his guilty plea under Rule 11(d)(2)(B). He has not sought to invalidate his conviction under the Sixth Amendment or any other provision of law. Thus, McKnight erred in framing his close assistance of counsel claim before the district court and this Court as a Sixth Amendment inquiry. We nonetheless apply the proper standard and conclude that McKnight was not denied close assistance of counsel.

Determining whether a defendant received close assistance of counsel requires a fact-intensive inquiry. In *Carr*, the defendant argued that the district court abused its discretion in denying his motion to withdraw his guilty plea because his trial counsel failed to inform the defendant of a potential defense to

the charge against him. *Carr*, 740 F.2d at 343. The evidence, however, demonstrated that the defendant's attorney closely assisted the defendant by (1) informing him of potential conflicts with representation, (2) negotiating a favorable plea agreement with the government, and (3) questioning the defendant about his reliance on the advice of previously retained counsel with regards to tax matters. *Id.* at 342-43. This Court held that the defendant received close assistance of counsel, and we also noted that the defendant received close assistance of "highly effective counsel." *Id.* at 345.

This Court engaged in a similar fact-intensive inquiry when it decided *United States v. Benavides*, 793 F.2d 612 (5th Cir. 1986). The defendant was represented by a public defender at the outset of the proceedings and later received substitute counsel due to a conflict. *Id.* at 613-14. The *Benavides* court detailed the actions taken by both attorneys representing the defendant. The defendant's first counsel (1) filed several motions in the case, including a motion to suppress; (2) filed several motions for continuance that were granted by the district court; (3) negotiated a plea agreement; and (4) alerted the defendant and the court when a conflict arose. *Id.* at 613. The court's description of the actions taken by the defendant's second attorney describe what took place after the defendant entered his guilty plea and provide a representation of the type of assistance the defendant received. The defendant's second counsel (1) raised multiple concerns with the pre-sentence investigation report, (2) questioned the district court's entry of an order authorizing the probation office to procure expunged records from the state district court, (3) engaged in detailed discussions with the defendant regarding his wish to enter a motion to withdraw a guilty plea, and (4) acted in accordance with the defendant's instructions even when made in an untimely manner. *Id.* at 614-15. This Court held that the defendant had close assistance of counsel throughout the proceedings. *Id.* at 617-18; *see also United States v. Morris*, 85 F. App'x 373, 374 (5th Cir. 2003)

(holding that a defendant received close assistance of counsel when the defendant previously stated that counsel discussed the entire case with the defendant); *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988) (affirming the district court's denial of a motion to withdraw the defendant's guilty plea when (1) the defendant testified that his attorney discussed all possible defenses with the defendant and that he was satisfied with his counsel's advice, and (2) the district court noted its personal knowledge of defense counsel's integrity when the defendant alleged that his counsel improperly pressured him to accept a guilty plea).

We now turn to the facts in the instant appeal. McKnight argues that he did not receive close assistance of counsel because Thiel failed to inform McKnight that he would be subject to a career offender enhancement.[2] The actions Thiel took on behalf of McKnight are detailed in Thiel's motion to withdraw as counsel. Thiel's motion to withdraw explicitly states that he advised McKnight that (1) cooperating with the Government would make him eligible for a possible recommendation in the form of a U.S.S.G 5K1.1 letter if his cooperation was productive and completely truthful, (2) only an acceptance of responsibility would earn him a three point Sentencing Guidelines reduction, and (3) if he chose to plead, the Government would not bill him as a habitual offender. The motion also explains that Thiel advised McKnight regarding the weight of the evidence, available options, and his Constitutional and legal rights. Although Thiel's motion to withdraw does not mention that McKnight would be subject to a career offender enhancement, it does demonstrate that McKnight

---

[2] We note that if McKnight was unaware of the career offender enhancement, this lack of information does not provide a basis for this Court to find that McKnight did not knowingly and voluntarily enter his guilty plea as required by the sixth *Carr* factor. The district court informed McKnight that he was subject to a "minimum term of imprisonment of not less than ten years and a maximum of life imprisonment." *See, e.g., United States v. Burgess*, 306 F. App'x 80, 81 (5th Cir. 2009) (explaining that a plea was voluntary when the defendant understood his maximum possible sentence).

received close assistance of counsel. *See, e.g., United States v. Rosales*, 281 F. App'x 424, 425 (5th Cir. 2008) (holding that a defendant failed to show he was deprived of close assistance of counsel even though the defendant successfully demonstrated that his counsel's opinion as to the defendant's potential sentence proved to be incorrect). We therefore cannot conclude that the district court abused its discretion by denying McKnight's motion to withdraw his guilty plea on this basis.

We stress, however, that our decision today should not be understood to "prejudice [McKnight's] right to raise [ineffective assistance of counsel] in a subsequent proceeding." *United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 159 (2008) (citation omitted); *see also United States v. Villegas-Rodriguez*, 171 F.3d 224, 230 (5th Cir. 1999) (explaining that a habeas corpus proceeding is ordinarily the proper mechanism for resolving an ineffective assistance of counsel claim). McKnight has argued that Thiel failed to properly advise him that he would be subject to a career offender enhancement. As we have explained, the veracity of this allegation would not alter our analysis under Rule 11(d)(2)(B). And the record seems in any event insufficient to sustain this contention–most obviously lacking is Thiel's testimony on the matter. However, if proved in the future, counsel's omission may lend support to an ineffective assistance of counsel claim. *See United States v. Herrera*, 412 F.3d 577, 580-582 (5th Cir. 2005); *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004).

## B. *Carr* Factor Six: Knowing and Voluntary Plea

McKnight argues that he was not competent to decide whether to plead guilty on September 27, 2006, therefore his decision to plead guilty was not knowing and voluntary. A defendant is considered legally competent if he has 1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and 2) a rational as well as a factual understanding

of the proceedings against him. *Theriot*, 18 F.3d at 313 (citation omitted); *see also Dusky v. United States*, 362 U.S. 402 (1960). Whether a defendant "suffers from a mental disorder or incapacitating mental illness is a question of fact reviewed under the clearly erroneous standard" but this Court takes a "hard look" at the ultimate competency finding. *Moody v. Johnson*, 139 F.3d 447, 482 (5th Cir. 1998) (citation omitted). This Court reviews a district court's decision regarding competency of a defendant "to stand trial, when a hearing has been conducted in federal court, as a mixed question of law and fact." *Id.*

In the district court's December 2007 order, the court stated that "McKnight is and has been throughout the proceedings mentally competent." The district court made this determination after reviewing evaluations from Dr. Salcedo, Dr. Rattan, and Dr. Cochrane. After one meeting with McKnight, Dr. Salcedo determined that McKnight was not competent and likely suffered from paranoid schizophrenia or another form of psychosis with delusional paranoia. After a fourteen-day evaluation, Dr. Rattan found McKnight to be incompetent and recommended that McKnight be transferred to a Bureau of Prisons medical referral center for restoration of competency. After an 120-day evaluation, Dr. Cochrane found that McKnight was malingering and competent, and subsequently determined that McKnight was competent on September 27, 2006, when McKnight entered his guilty plea. The district court weighed the evaluations of the three physicians and accepted the recommendations of Dr. Cochrane. The district court did not clearly err in relying on Dr. Cochrane's recommendation.

As is stated above, a district court abuses its discretion in denying a defendant's motion to withdraw a guilty plea only if the court bases its decision on an error of law or a clearly erroneous assessment of the evidence. *See Mann*, 161 F.3d at 860. Because the district court did not clearly err in relying on Dr. Cochrane's recommendation, we conclude that the district court did not abuse

its discretion in denying McKnight's motion to withdraw his guilty plea on that basis.

## C. Other *Carr* Factors

As we previously explained, the district court's decision regarding a withdrawal motion is accorded broad discretion and reviewed for abuse of discretion. *Carr*, 740 F.2d at 344. In *Carr*, this Court found that a defendant who delayed twenty-two days did not promptly file his withdrawal motion. *Id.* at 345. The Court explained that the purpose of "allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered." *Id.* The *Carr* Court also explained that a mere assertion of innocence "is far from being sufficient to overturn denial of a withdrawal motion." *Id.* at 344. In addition, *Carr* found that the absence of prejudice to the Government does not necessarily justify reversing the district court's decision. *Id.* at 345. Further, this Court found that allowing Carr to withdraw his plea would have substantially inconvenienced the district court because the court expected the trial to take two to three weeks. *Id.* Rescheduling such a lengthy trial would significantly disrupt the district court's docket. *Id.* Finally, this Court explained that the district court's determination as to whether the withdrawal motion would waste judicial resources is entitled to substantial deference because the district court is in the best position to know the effect that the withdrawal had on its resources. *Id.* at 345. The *Carr* factors are considered for the totality of the circumstances. *Powell*, 354 F.3d at 370 (citation omitted).

### 1. *Carr* Factor One - Assertion of Innocence

McKnight's motion to withdraw his guilty plea "asserts his innocence" without further explanation. This assertion was not supported by the claims McKnight now presents regarding his legal innocence based on insanity and entrapment. During rearraignment, McKnight made several affirmative

declarations that he was guilty as charged. Because "solemn declarations in open court carry a strong presumption of verity," the district court did not abuse its discretion in placing little weight on McKnight's assertion of innocence. *See United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001); *see also Carr*, 740 F.3d at 344.

## 2. *Carr* **Factor Two - Prejudice to the Government**

The Government argues that it would suffer prejudice if McKnight is allowed to withdraw his guilty plea because it will be difficult to locate the CS. McKnight argues that the officer who purchased the cocaine base from McKnight is available to testify at trial. Given the facts surrounding this case, it does not appear that there would be prejudice to the Government if the case were to proceed to trial, although the district court found that there was. Regardless, *Carr* made clear that the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea. *Carr*, 740 F.3d at 344.

## 3. *Carr* **Factor Three - Delay in Filing Withdrawal Motion**

The district court determined that McKnight delayed in filing his motion to withdraw. The Government argues that the delay was for nine months and, therefore, is unreasonable under *Carr*. This is incorrect. McKnight's letter to the district court, postmarked the day after he pled guilty, communicated doubts regarding the guilty plea. In addition, Thiel's October 25, 2006, motion to withdraw, explicitly states that McKnight "advised [Thiel] that he wanted to withdraw his guilty plea." By October 25th, Dr. Salcedo had already found McKnight incompetent. The delay in issuing a formal motion to withdraw with the district court is a direct result of the differing diagnoses regarding McKnight's competency. Once the district court affirmatively ruled that McKnight was competent, his counsel promptly filed an oral motion to withdraw his guilty plea. McKnight did not delay filing his motion to withdraw.

### 4. *Carr* Factor Four - Inconvenience to Court

In *Carr*, the time needed for trial was two to three weeks and this Court determined that such a lengthy trial would inconvenience the district court. *Carr*, 740 F.3d at 345. In the instant case, McKnight estimates only two days are needed for trial. The short time period, however, does not necessitate a finding that there is no inconvenience to the district court.

### 5. *Carr* Factor Seven - Waste of Judicial Resources

As is explained in *Carr*, the district court is in the best position to know the effect that withdrawal has on its resources. *Carr*, 740 F.3d at 345. McKnight presents no evidence to support a conclusion that the district court abused its discretion in determining that granting McKnight's motion to withdraw his guilty plea would waste judicial resources.

## IV. <u>CONCLUSION</u>

Based on the foregoing analysis, we hold that the "totality of the circumstances" do not persuade us that the district court abused its discretion in denying McKnight's motion to withdraw his guilty plea. Thus, we AFFIRM.