# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40703

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DEMONT MENASCO HERROD,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

February 19, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Texas
No. 4:11-CR-176-1

Before KING, DAVIS, and OWEN, Circuit Judges.

KING, Circuit Judge:*

Defendant-Appellant Demont Menasco Herrod pleaded guilty to several drug-related crimes and was sentenced to a term of imprisonment of 175 months. After his guilty plea, but prior to sentencing, Herrod moved: (1) to dismiss his counsel and proceed pro se, and (2) to withdraw his guilty plea. Both motions were referred to a magistrate judge who, after conducting a hearing, recommended that the district court grant Herrod's motion to proceed

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40703

pro se and deny his motion to withdraw the guilty plea. The district court adopted the recommendation. On appeal, Herrod challenges the district court's ruling as to both motions. For the following reasons, we AFFIRM the judgment of the district court.

## I.     Factual and Procedural Background

On September 15, 2011, a federal grand jury returned an indictment charging Defendant-Appellant Demont Menasco Herrod on two counts: (1) a violation of 21 U.S.C. § 846, conspiracy to distribute and possess with the intent to distribute cocaine and marijuana ("Count One"); and (2) a violation of 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime ("Count Three").[1] Herrod made his initial appearance on September 28, 2011, during which Herrod was advised of his charges, the maximum penalties he faced, and his right to counsel. At this time, a federal public defender was appointed for Herrod. On October 28, 2011, the court granted Herrod's motion to substitute private retained counsel for his public defender.

On June 21, 2012, pursuant to a written plea agreement, Herrod waived his right to a jury trial and entered a plea of guilty to Count One insofar as it charged him with conspiracy to distribute and possess with the intent to distribute 1,000 kilograms or more of marijuana. With the consent of the parties, the plea hearing took place before the magistrate judge ("MJ"). The MJ advised Herrod of the nature of the charges against him, as well as the maximum possible penalties and mandatory minimum sentence he faced. The MJ then issued findings of fact and a recommendation that the district court accept Herrod's guilty plea. On June 28, 2012, the district court adopted the recommendation and found Herrod guilty. Under the plea agreement, Herrod waived the right to appeal his conviction and sentence except for "(a) any

---

[1] Count Two of the indictment pertained only to Herrod's co-defendant.

2

No. 13-40703

punishment imposed in excess of the statutory maximum, and (b) a claim of ineffective assistance of counsel that affects the validity of the waiver or the plea itself."[2]  On December 13, 2012, the probation department prepared a presentence report ("PSR"), which recommended a term of imprisonment of 315 months.  Herrod, through his attorney, filed various objections to the PSR.

On March 25, 2013—prior to the sentencing hearing, but nine months after his guilty plea—Herrod filed a pro se motion to dismiss his counsel, seeking to exercise his right to proceed pro se.  In the same motion, Herrod also moved to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B).  Herrod stated in the motion that his counsel "coerced" him into pleading guilty, "convincing him that the best thing for him to do is plead guilty and sign without addressing him [sic] questions about the constitutional limits on governmental authority."[3]  Herrod also cited authority related to his right to represent himself pro se, noting that choosing to proceed pro se may "ultimately [be] to his own detriment." (quoting *Faretta v. California*, 422 U.S. 806, 834 (1975)).  Herrod's attorney separately filed a motion to withdraw as counsel.  The Government filed an opposition to Herrod's request to withdraw his guilty plea.  The district judge referred the motions to the MJ,[4] who held a hearing on April 11, 2013.

At the hearing, the MJ confirmed that Herrod still wished to proceed pro se.  The MJ also stated:

> I—I'm required, first of all, to tell you that—of course, you have a
> right to represent yourself.  You've done your own research on that.
> You know that.  But I'm required to—if you've done that much

---

[2] The Government does not contend that the waiver applies to bar the claims Herrod raises on appeal.

[3] Herrod also contended that his counsel refused to file various motions he had prepared—including a motion for an evidentiary hearing, for grand jury minutes, for a bill of particulars, and for change of venue.

[4] This was the same MJ who had taken Herrod's guilty plea.

research, you know that courts also require that a judge go over with you that there can be problems with self-representation. You know, you're not a lawyer. You may be a smart guy and, for all I know, a very smart guy, but the law is a different area and there can be certain legal obstacles, legal hurdles that you may encounter that would be detrimental to your case and would be advisable to have a lawyer. Now, do you understand that?

Herrod responded that he did understand, noting: "I would like for the Court to give me an investigator and time to go to the law library, things that I need to help me fight the government." The MJ informed Herrod that he would "have to address these issues as we go along" and stated that Herrod does not "have a right to have an investigator." The MJ further stated: "I would appoint a lawyer for you, but you also have a right to represent yourself." Herrod responded: "Yeah, I'd rather represent myself for right now. I'm in the process of looking for another attorney." The MJ then stated:

Okay. You can represent yourself. I'm just establishing on the record that there are—that it's dangerous. I use as an example all the time what Abraham Lincoln said: "He who represents himself has a fool for a client." I mean, you hear that from the first day of law school. I wouldn't even represent myself in a case, even in a minor civil case. You get too caught up in the emotions and sometimes you lose sight of what's real. But, anyway, I'm making that point to you. So, it's your decision, though, to knowingly and voluntarily at this time to waive your right to counsel. Yes?

Herrod responded in the affirmative.

Herrod refused to participate in the portion of the hearing relating to his motion to withdraw his guilty plea, as he "want[ed] to have a district judge in front of" him. Therefore, the MJ discussed the motion with the Government's counsel while Herrod remained silent. Following the hearing, the MJ issued a report and recommendation that Herrod's counsel be permitted to withdraw, that Herrod's request to proceed pro se be granted, and that Herrod's request to withdraw his guilty plea be denied. Herrod timely objected to the MJ's report and recommendation. He also filed a variety of other motions, including:

several motions to dismiss, a motion to quash, a motion for a hearing, and a motion for a bill of particulars. The probation department prepared a revised PSR on May 13, 2013, to which Herrod filed pro se objections. On June 14, 2013, the district court adopted the report and recommendation of the MJ, granting Herrod's motion to proceed pro se and denying his motion to withdraw his guilty plea.[5] After conducting a sentencing hearing (at which Herrod appeared pro se), the court sentenced Herrod to a below-guidelines term of imprisonment of 175 months, five years of supervised release, and a $100 special assessment. Pursuant to the plea agreement, the Government moved to dismiss Count 3 of the indictment; the district court granted the motion. Herrod then filed a motion for reconsideration, which the court denied. Herrod timely appeals.

## II.     Standard of Review

A criminal defendant has a Sixth Amendment right to represent himself, "but only when he knowingly and intelligently chooses to do so." *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005). A defendant's claim that he did not knowingly and intelligently waive the right to counsel is reviewed de novo. *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003).

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The defendant bears the burden of establishing a fair and just reason for withdrawing his plea," and "[a] district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion." *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003).

---

[5] The court also denied Herrod's various other pending motions.

No. 13-40703

## III.   Discussion

### A. Motion to Proceed Pro Se

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court held that although the Sixth Amendment entitles a criminal defendant to forgo counsel and represent himself, "the accused must knowingly and intelligently forgo th[e] relinquished benefits [of counsel]."  *Id.* at 835 (internal quotation marks omitted).  The Court stated:  "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  *Id.* (internal quotation marks omitted).

Accordingly, we have held that in order to ensure that the waiver of counsel is knowingly and intelligently made, the district court must consider various factors, including "the defendant's age and education, and other background, experience, and conduct."  *United States v. Davis*, 269 F.3d 514, 518 (5th Cir. 2001) (internal quotation marks omitted).  The court must also "ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving."  *Id.* (internal quotation marks and footnote omitted). However, this circuit "require[s] no sacrosanct litany for warning defendants against waiving the right to counsel."  *Id.* at 519.  Rather, "[d]epending on the circumstances of the individual case, the district court must exercise its discretion in determining the precise nature of the warning."  *Id.*; *see also United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006) ("Because of the vast differences from case to case, and defendant to defendant, a district court must

6

No. 13-40703

consider the totality-of-circumstances in determining whether a defendant has properly waived his right to counsel.").[6]

Herrod contends that the MJ failed to adequately advise him of the dangers and disadvantages of proceeding pro se.[7] The MJ made the following statements to Herrod during the hearing:

- "[T]here can be problems with self-representation."

- "You know, you're not a lawyer. You may be a smart guy and, for all I know, a very smart guy, but the law is a different area and there can be certain legal obstacles, legal hurdles that you may encounter that would be detrimental to your case and would be advisable to have a lawyer."

- "I'm just establishing on the record that there are—that it's dangerous."

- "I would appoint a lawyer for you, but you also have a right to represent yourself."

- "I use as an example all the time what Abraham Lincoln said: 'He who represents himself has a fool for a client.' I mean, you hear that from the first day of law school. I wouldn't even represent myself in a case, even in a minor civil case. You get too caught up in the emotions and sometimes you lose sight of what's real."

---

[6] The *Benchbook for U.S. District Court Judges*, published by the Federal Judicial Center, provides proposed questions the district judge may ask in conducting this inquiry. However, this court "has approved warnings much less thorough than the guidelines presented in the bench book." *Jones*, 421 F.3d at 363–64.

[7] Herrod concedes that the MJ did not err by failing to inform him of "the nature of the charges" or "the consequences of the proceedings," *Davis*, 269 F.3d at 518 (internal quotation marks omitted), given that Herrod acknowledged his understanding of this information at his earlier plea hearing. Herrod also does not argue that the MJ erred by failing to inquire into Herrod's education and background during the colloquy. Indeed, the MJ had the opportunity to evaluate Herrod's competence in person both at the *Faretta* hearing and at the prior hearing in relation to Herrod's guilty plea.

Although this relatively sparse colloquy is considerably less than ideal, we conclude that it is not constitutionally defective under the particular circumstances of this case.

As we have repeatedly stated, district courts need not "follow a script" while conducting *Faretta* hearings, as "[t]his court requires no sacrosanct litany for warning defendants against waiving the right to counsel." *Jones*, 421 F.3d at 363 (internal quotation marks and brackets omitted); *see also Davis*, 269 F.3d at 519; *Virgil*, 444 F.3d at 453. The colloquy here is comparable to the colloquy we approved of in *Joseph*:

> After expressing a desire to proceed pro se, the court explained to Joseph the disadvantages of self-representation. The court provided: "I seriously recommend to you that you allow Mr. Chaney and his assistant to represent you . . . because they are very good lawyers." After informing Joseph that Mr. Chaney would remain as stand-by counsel, the court reiterated its warning: "It is my strong recommendation to you that you allow Mr. Chaney to do the questioning, that you allow him to do the cross-examination, and that you allow him to put on evidence if there is any evidence on your behalf." After explaining that Joseph had shown no good cause for the appointment of a different defense counsel, the district court urged once again, "I am discouraging you from representing yourself." Despite these warnings, Joseph proceeded pro se.

*Joseph*, 333 F.3d at 590 (internal brackets omitted) (affirming the district court's decision to allow the defendant to proceed pro se). Here, the MJ similarly recommended that Herrod proceed with counsel, repeatedly warning Herrod that he would face "legal obstacles" and other problems that could be "detrimental" to his case. *Cf. United States v. Fulton*, 131 F. App'x 441, 442–43 (5th Cir. 2005) (unpublished) (determining that colloquy was sufficient where the district court "warned [the defendant] that his case was 'complex,' that it would involve 'complex issues' regarding wiretap evidence, that it was in [the defendant]'s 'best interest' to continue with appointed counsel, and that

he would have a 'daunting task' if he proceeded pro se at trial, where he would be faced with a 'very capable prosecutor'").

Moreover, we have emphasized that both the "the stage of the proceedings and the setting in which the waiver is advanced" are relevant to this analysis. *Virgil*, 444 F.3d at 453. In *Virgil*, we favorably cited a case from the Third Circuit, *id.*, concluding that the "distinction [between the guilt phase and the sentencing hearing] is clearly relevant to the content of the colloquy which the court must have with the defendant," *United States v. Salemo*, 61 F.3d 214, 219 (3d Cir. 1995) ("[T]he inquiry at sentencing need only be tailored to that proceeding and the consequences that may flow from it."). Here, Herrod moved to proceed pro se after an adjudication of his guilt, with only his sentence and his motion to withdraw his guilty plea (which Herrod filed concurrently with his motion to proceed pro se) left to be decided. Because Herrod was not facing the daunting task of conducting a criminal trial by himself on his own behalf, the colloquy here "need not be as exhaustive and searching as a similar inquiry before the conclusion of trial." *Id.*; *cf. Patterson v. Illinois*, 487 U.S. 285, 299–300 (1988) ("[W]e require a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than we require for a Sixth Amendment waiver during postindictment questioning . . . because the full dangers and disadvantages of self-representation during questioning are less substantial and more obvious to an accused than they are at trial." (internal quotation marks and citation omitted)). Thus, although in a prior case this court deemed insufficient a relatively generic *Faretta* colloquy, the defendant in that case sought to proceed pro se on the eve of trial, *see Jones*, 421 F.3d at 362, when the risks of self-representation are at their highest, *cf. Virgil*, 444 F.3d at 454 (concluding that district court erred in allowing defendant to proceed pro se at sentencing stage where "[t]he government concede[d] that no *Faretta* colloquy took place").

No. 13-40703

Other factors particular to this case support affirming the district court's decision to allow Herrod to proceed pro se. First, Herrod has a lengthy criminal history—as evidenced in his PSR—including over a dozen criminal convictions. Although the present case appears to have been Herrod's first experience in federal court, there can be little doubt that Herrod's substantial experience with the criminal justice system apprised him of the role of an attorney, what an attorney adds to the process. *See Davis*, 269 F.3d at 518 (stating that the defendant's background and experience are factors relevant to *Faretta* inquiry); *Greene v. United States*, 880 F.2d 1299, 1304 (11th Cir. 1989) (concluding that the defendant's "substantial experience with the criminal justice system . . . weighs in favor of a finding of effective waiver"). Herrod also recognized in his motion to proceed pro se that doing so could ultimately be "to his own detriment." (quoting *Faretta*, 422 U.S. at 834). Moreover, Herrod's repeated insistence on proceeding pro se—as evidenced in his motion and in the hearing transcript—supports the conclusion that his waiver of counsel was knowingly and voluntarily made. *See United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir. 1986) (finding waiver knowing and voluntary where proceeding pro se "was [the defendant's] apparent and stated intent before arraignment" and where "[i]t was his obvious intent before trial"). Although Herrod briefly stated during the *Faretta* hearing that he was "in the process of looking for another attorney," he declined the MJ's offer to have another attorney appointed for him. Indeed, Herrod had already gone through two attorneys during his case. It appears that Herrod, who was determined to file various (apparently frivolous) motions he had prepared, realized that the only way to accomplish this end was to proceed pro se and file the motions himself.

Considering the totality of "the circumstances of th[is] individual case," *Davis*, 269 F.3d at 519, we conclude that the MJ's colloquy was constitutionally

10

adequate, and that Herrod knowingly and voluntarily waived his right to counsel.

## B. Motion to Withdraw Guilty Plea

In determining whether the district court abused its discretion by denying a motion to withdraw a guilty plea, this court considers the following seven factors:

> (1) whether [the defendant] asserted his innocence; (2) whether the Government would suffer prejudice if the withdrawal motion was granted; (3) whether [the defendant] delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to [the defendant]; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*United States v. McKnight*, 570 F.3d 641, 645–46 (5th Cir. 2009) (citing *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984)). These "*Carr*" factors "are considered for the totality of the circumstances, and the district court is not required to make a finding as to each individual factor." *Id.* at 646. "[T]he defendant has the burden of proving the withdrawal is justified" and "the trial court's decision regarding a withdrawal motion must be accorded broad discretion." *Carr*, 740 F.2d at 344 (internal quotation marks omitted). Applying the above factors to the facts of this case, we conclude that the district court did not abuse its discretion by denying Herrod's motion to withdraw.

Although Herrod asserted his innocence when filing his motion to withdraw his guilty plea, we accord this factor little weight under the circumstances. First, an assertion of innocence "alone is far from being sufficient to overturn denial of a withdrawal motion." *Id.* This is especially so where innocence is asserted "without further explanation." *McKnight*, 570 F.3d at 649; *see also United States v. Clark*, 931 F.2d 292, 295 (5th Cir. 1991) ("[T]he mere assertion of innocence, absent a substantial supporting record will

not be sufficient to overturn a denial of a motion to withdraw."). In his motion to withdraw his plea, Herrod failed to offer any facts in support of his claimed innocence, but rather appeared to object only to the PSR's calculation of his recommended sentence. Indeed, it is clear from the record that it was the unexpected length of the PSR's proposed sentence—not any revelation with respect to his guilt or innocence—that prompted Herrod to move to withdraw his plea. *Cf. United States v. Rosales*, 281 F. App'x 424, 425 (5th Cir. 2008) (unpublished) (stating that defendant "did not assert his innocence" where he "merely objected to the quantity of drugs attributed to him for sentencing purposes"). Furthermore, Herrod acknowledged his guilt on the record at his guilty plea hearing, and through a signed factual statement—in which he admitted the facts underlying his offense. "[S]olemn declarations in open court carry a strong presumption of verity." *McKnight*, 570 F.3d at 649 (internal quotation marks omitted); *see also Clark*, 931 F.2d at 294 ("Though Clark claims he has asserted his innocence throughout the government's investigation, he did plead guilty under oath to a federal district judge."). Because Herrod did not assert his innocence until he filed the motion to withdraw his plea, this factor deserves little weight, as "[g]uilt or innocence appears merely to be an issue of expedience for [Herrod]." *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994).

The Government contends that it will suffer prejudice if Herrod is permitted to withdraw his guilty plea, as several years have passed since Herrod's plea, and "investigators, agents, and the prosecutor had moved on to other pressing matters in reliance on the fact that Herrod's case has been concluded." Herrod responds that the Government would suffer no prejudice, as his co-defendants will be available to testify against him. Although there is no doubt that the Government would be burdened by having to try this case after a delay of more than nine months, the Government's generic assertion of

prejudice, which can be put forward in almost any case, does not weigh heavily in its favor. *See McKnight*, 570 F.3d at 649 (finding no prejudice even where "it will be difficult to locate the [confidential source]" to testify for a new trial, as similar evidence would be available by other means); *cf. Clark*, 931 F.2d at 295 (deferring to district court finding of prejudice based on "the difficulties in renewing an investigation long after it had been terminated, the absence from governmental service of several key governmental investigators and the fact that most of the records are no longer in a convenient form"). In any event, even "the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea." *McKnight*, 570 F.3d at 649.

The third factor—Herrod's delay in filing his motion to withdraw—weighs heavily in favor of the Government. Herrod filed the motion more than nine months after pleading guilty. In previous cases, we have determined that substantially shorter delays weigh in favor of affirming the denial of a motion to withdraw. *See Thomas*, 13 F.3d at 153 (stating that "the six-week delay between entry of the plea and the motion to withdraw is significant"); *United States v. Rinard*, 956 F.2d 85, 88–89 (5th Cir. 1992) (finding that, "given the 69-day delay between [the defendant]'s plea and his verbal motion to withdraw the plea," among other factors, "the district court did not abuse its discretion in denying [the defendant]'s verbal motion to withdraw his guilty plea"); *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988) (holding that delay weighed in favor of affirming denial of motion where the defendant "first moved for withdrawal at sentencing, seven weeks after pleading guilty"); *Carr*, 740 F.2d at 345 (stating that a motion to withdraw "was not promptly filed" where "[t]he defendant waited twenty-two days [after pleading guilty] before filing his motion"). Herrod argues that he did not delay in filing the motion, but

No. 13-40703

rather filed it as quickly as possible after learning of the PSR's recommended sentence. However, as this court has stated:

> The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.

*Carr*, 740 F.2d at 345. The fact that the PSR's recommended sentence prompted Herrod to move to withdraw his plea suggests that he was making a tactical decision—not that his plea was unknowingly made. *See Hurtado*, 846 F.2d at 997 (rejecting argument that delay was justified because the defendant "had been thinking and meditating [about] how [his] attorney influenced [him]" (internal quotation marks omitted)); *Thomas*, 13 F.3d at 153 ("[The defendant]'s explanation that his plea resulted from bad advice and pressure from his attorney would carry more weight had his withdrawal been prompt."). This is not a case in which, for example, Herrod had "communicated doubts regarding the guilty plea" soon after he pleaded guilty. *McKnight*, 570 F.3d at 650.[8] Thus, Herrod's substantial delay in filing the motion to withdraw his plea weighs heavily in the Government's favor.

The fourth and seventh *Carr* factors—the inconvenience to the court and the potential waste of judicial resources—also weigh in the Government's favor. Even assuming Herrod's trial would be relatively short, "the short time period . . . does not necessitate a finding that there is no inconvenience to the district court." *Id.* Here, the district court made a finding that "the withdrawal would waste . . . judicial resources." We are generally hesitant to disrupt such

---

[8] Even if we were to consider only the delay between the filing of the PSR and the filing of the motion to withdraw, that period—more than three months—is still longer than the delays in the cases cited above.

findings, as "the district court is in the best position to know the effect that withdrawal has on its resources." *McKnight*, 570 F.3d at 650; *see also Carr*, 740 F.2d at 345 ("The district court's assessment of this factor is entitled to substantial deference since it is in the best position to know the effect that the withdrawal had on its resources."). Herrod offers no persuasive reason to disturb this finding. Rather, Herrod notes only that *more* judicial resources would be wasted by what "promises to be an endless parade of *pro se* pleadings and paperwork" filed by Herrod from prison. But Herrod's threat of future (possibly frivolous) filings is inapposite to whether allowing this case to go to trial will inconvenience the court or waste its resources.

Herrod argues that the fifth *Carr* factor weighs in his favor, as he did not receive the close assistance of counsel in relation to his plea. Herrod contends that his attorney: (1) "lied to [him] and misled [him]"; (2) provided him with an estimated sentence that was "wildly off the mark"; and (3) failed to explain to him the differences between the state and federal criminal justice systems. Despite these allegations, we conclude that Herrod was afforded close assistance of counsel throughout his plea. Here, Herrod's attorney—privately retained counsel he had chosen—negotiated a plea agreement on his behalf. *See McKnight*, 570 F.3d at 646–47 (discussing prior cases and noting that the fact that counsel "negotiated a plea agreement" weighs in favor of finding close assistance of counsel). Importantly, at his plea hearing, Herrod stated that he was satisfied with the assistance of his counsel. *See United States v. Rodriguez*, 306 F. App'x 135, 138 (5th Cir. 2009) (unpublished) (finding no abuse of discretion in denial of motion to withdraw, noting that the defendant "indicated that he was satisfied with the representation of counsel during his plea colloquy"); *United States v. Morris*, 85 F. App'x 373, 374 (5th Cir. 2003) (unpublished) ("There is no support in the record for [the defendant's] assertion that he did not have close assistance of counsel. [The defendant] stated at the

guilty plea hearing that he was satisfied with his counsel's representation and that his counsel had discussed his entire case with him."). Herrod also confirmed in writing that he was "fully satisfied with defense counsel's legal representation," and that he "received satisfactory explanations from defense counsel concerning each paragraph of [the] plea agreement, each of [his] rights affected thereby, and the alternatives to entering a guilty plea." Moreover, even if Herrod's counsel misadvised him regarding his likely sentence, this does not preclude a finding of close assistance of counsel. *See McKnight*, 570 F.3d at 647–48; *see also United States v. Mendez*, 447 F. App'x 577, 579 (5th Cir. 2011) (unpublished) ("[The defendant's] claim that counsel misadvised him regarding the Sentencing Guidelines is insufficient to show that he did not receive close assistance."); *Rosales*, 281 F. App'x at 425 ("[A]lthough [the defendant] demonstrated that counsel's opinion as to his potential sentence proved to be incorrect, he has not shown that he was deprived of counsel's close assistance."). Therefore, this factor too weighs in the Government's favor.

With respect to the sixth *Carr* factor, we conclude that Herrod's plea was knowing and voluntary. Whether a plea is knowing depends on whether the defendant understood the consequences of his plea; whether it was voluntary depends on whether the plea was induced by threats or improper promises. *See United States v. Hernandez*, 234 F.3d 252, 254 n.3 (5th Cir. 2000). Herrod argues, without further explanation, that his pro se pleadings should "cast doubt" on whether his plea was knowing and voluntary. But he has put forward no evidence suggesting that his plea was unknowing or improperly induced. In addition, "[t]he consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990) (internal quotation marks omitted). Thus, "[a]s long as the defendant understood the length of time he might possibly receive, he was fully

aware of his plea's consequences." *Id.* (internal quotation marks and brackets omitted); *see also Rosales*, 281 F. App'x at 425 ("[B]ecause Rosales was aware of his minimum and maximum potential sentences and understood the elements of the offense as charged, he also has not established that his guilty plea was not knowing or voluntary."). The plea transcript makes clear that Herrod was adequately advised of the maximum and minimum prison terms and fines he faced, among other consequences. Herrod also acknowledged, in his plea agreement, that he would not be able to withdraw his plea even if he was sentenced to a term longer than he expected. Furthermore, although Herrod contends that his attorney pressured him into accepting a plea deal, Herrod affirmed under oath at his plea hearing that his plea was "freely and voluntarily made" and that "no one forced [him], threatened [him], or made any promises to [him]" to induce him to plead guilty. Such a "declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity." *Clark*, 931 F.2d at 295 (internal quotation marks omitted). Thus, this factor weighs in the Government's favor.

Accordingly, based on the totality of the circumstances, we cannot say that the district court abused its discretion when it denied Herrod's motion to withdraw his guilty plea. The vast majority of the factors—most significant, Herrod's delay in filing the motion—weigh strongly in the Government's favor. Given the deference this court must accord to the district court's decision, and given that Herrod bears the burden to establish that withdrawal is justified, *Carr*, 740 F.2d at 344, we conclude that the district court did not err in denying Herrod's motion to withdraw his plea.

## IV.    Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.